[L. A. No. 1483. In Bank.—February 3, 1906.]

## THE PEOPLE, Appellant, v. TOWN OF ONTARIO, Respondent.

TOWNS—ANNEXATION OF TERRITORY—VOTE OF PEOPLE—CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER.—The act of March 19, 1889, providing for the annexation of territory to incorporated towns and cities, does not in its provision for a vote by the people of the town or city, and also of the people of the territory to be annexed, comprise any unwarranted delegation of legislative power.

ID.—LIMITS OF LEGISLATIVE POWER—CHANGE OF MUNICIPAL BOUNDARIES.—The legislature is limited by the constitution to the enactment of general laws under which municipal corporations may be created or change their boundaries From the nature of things, it cannot by general laws fix the boundaries of municipal corporations. It can only provide by general laws a method whereby such boundaries may be fixed or changed. In the absence of any other constitutional limitation the legislature may adopt any method it sees fit.

ID.—FIXING OF BOUNDARIES OF TERRITORY TO BE ANNEXED—QUESTION OF POLICY—CONCLUSIVE DETERMINATION OF LEGISLATURE.—The fixing of the boundaries of the territory to be annexed is not a "municipal function," within section 13 of article XI of the constitution. The constitution does not provide that this power can be conferred only on some legislative body, and not upon the electors of the locality to be affected; and, in the absence of such provision, the question whether it shall be given to one or the other is purely one of policy, upon which the determination of the legislature is conclusive.

ID.—SUFFICIENCY OF NOTICE—VOTE OF PEOPLE—SUBMISSION TO VOTE—DETERMINATION OF SUFFICIENCY OF PETITION.—The provision of the statute for notice of the election is a sufficient provision of notice. No notice of hearing of the submission to the vote of the people is required; nor is the statute unconstitutional because it does not require notice of the hearing of the determination by the council whether the petition is sufficiently signed, or describes the boundaries of the territory to be annexed with sufficient clearness.

CXLVIII Cal.—40

ID.—UNINHABITED PORTIONS OF TERRITORY ANNEXED.—The fact that portions of the territory annexed under the act of 1889 were uninhabited does not require that proceedings for such portions should be had under the act of 1899 for the annexation of uninhabited territory, where the land annexed, taken as a whole, may be fairly said to be inhabited, since the act of 1899 expressly provides that ''nothing in this act shall be deemed to repeal the provisions of any act now providing for the annexation of inhabited territory.''

ID.—PETITION FOR ANNEXATION—JURISDICTION OF BOARD OF TRUSTEES—SUFFICIENCY OF SIGNATURES.—The duty of the board of trustees to determine whether or not a petition for an annexation election is signed by a sufficient number of electors is entirely implied from the fact that it has no power to order the election except upon a petition signed by that number. The statute does not in terms require such determination or require any record thereof to be made. It is the petition signed by the requisite number that gives the power and creates the duty, and not the determination by the board of the sufficiency of the petition.

ID.—MINUTE ENTRY OF BOARD.—The minute entry of the board need not show that the board received sworn evidence as to the genuineness of the signatures, or made any other investigation than such as may reasonably be implied from the words ''taken up and discussed.'' The statute makes no provision as to the character of the proof essential in such a case.

ID.—IMPLIED FINDING CONCLUSIVE IN QUO WARRANTO—COLLATERAL ATTACK.—An implied finding is conclusive in a *quo warranto* proceeding, or in any case where the order of the board of trustees is collaterally attacked.

ID.—REGULAR ADJOURNED MEETING OF BOARD—ACTION UPON PETITION—SUPPORT OF FINDING.—*Held*, that there was sufficient evidence to support the finding of the trial court that the petition of electors for the annexation election was received and acted upon at a regular adjourned meeting of the board of trustees, as shown by the minutes thereof, nothing appearing at the trial to the contrary.

ID.—SUFFICIENCY OF NOTICE OF ELECTION.—Where the resolution of the board of trustees provided for an election to be held in accordance with a notice of election which was complete in every respect, and formed part of the resolution, and instructed the clerk to have it printed according to law in certain specified papers, leaving nothing to his discretion, and the notice was given in the manner ordered by the board, and was signed by the acting president of the board, and attested by the town clerk, and published by order of the board and in conformity to the statute, the notice and publication thereof were sufficient to answer every requirement.

ID.—FORM OF BALLOT—NOTICE—SUBSTANTIAL COMPLIANCE WITH STATUTE.—Where the statute provided what the notice should contain as to the form of the ballot as being ''for annexation'' or ''against annexation,'' or ''words equivalent thereto,'' and the notice followed the statute, the fact that the ballots actually used con-

tained the words "For annexation—Yes" and "For annexation—No" could not make them misleading, and the statute was substantially complied with.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

Tirey L. Ford, Ex-Attorney-General, U. S. Webb, Attorney-General, C. E. Sumner, and Henry M. Willis, for Appellant.

T. E. Parke, E. R. Annable, and Otis, Gregg & Surr, for Respondent.

ANGELLOTTI, J.—This is an action in the nature of *quo warranto,* brought to determine the validity of certain proceedings whereby defendant, a municipal corporation of the sixth class, claims that certain territory lying adjacent to the town of Ontario has been annexed to and is now a part of said town. Defendant had judgment in the court below, and this is an appeal from the judgment and from an order denying a motion for a new trial. The annexation proceedings were had under the act of March 19, 1889, providing for the annexation of territory to incorporated towns and cities, and for the incorporation of such annexed territory in and as a part of such municipalities. (Stats. 1889, p. 358, c. 247.)

1. The question principally discussed by counsel is as to the constitutionality of said act, it being claimed by plaintiff that the statute is unconstitutional for certain reasons. While the constitutionality of this act has heretofore been upheld by this court as against certain objections made to it (*People* v. *City of Oakland,* 123 Cal. 598, [56 Pac. 445], and *Vernon etc. Dist.* v. *Board of Education,* 125 Cal. 593, [58 Pac. 175]), and while the constitutionality of an act relating to the exclusion of territory from a municipal corporation, having a somewhat similar provision as to the circumstances under which an election upon the question must be ordered as the act under consideration, has also been upheld (*People* v. *Common Council,* 85 Cal. 369; [24

Pac. 727] ; *People* v. *Coronado,* 100 Cal. 571, [35 Pac. 162]),
it is claimed that the precise objections here made have never
before been squarely presented or decided. This claim may
here be conceded to be correct. The act of 1889, so far as
material to the objections here made, provides as follows:
"The boundaries of any incorporated town . . . may be
altered and new territory annexed thereto . . . upon pro-
ceedings being had and taken as in this act provided. The
council, board of trustees, or other legislative body of any
such municipal corporation, upon receiving a written peti-
tion therefor containing a description of the new territory
asked to be annexed to such corporation, and signed by not
less than one fifth in number of the qualified electors of
such municipal corporation, computed upon the number of
votes cast at the last general municipal election held therein,
must, without delay, submit to the electors of such municipal
corporation, and to the electors residing in the territory
proposed by such petition to be annexed to such corporation,
the question whether such new territory shall be annexed to,
incorporated in, and made a part of such municipal cor-
poration." The act then provides for the election in the
municipality and outside territory, upon notice given by the
legislative body of the municipality, the canvass of the re-
turns by such body, and further, that "if it shall appear
from such canvass that a majority of all the ballots cast in
such outside territory, and a majority of all the ballots cast
inside of said municipal corporation are in favor of annexa-
tion," a certified statement accordingly must be forwarded
to the secretary of state for filing by him, and that from
such filing the annexation shall be deemed complete. It is
further provided that no property in the annexed territory
shall ever be taxed to pay any indebtedness of the munici-
pality existing at the date of the annexation, and that no
territory forming part of any incorporated town or city
shall be annexed under the provisions of the act. It will
be observed from the foregoing that no discretionary power
whatever is vested in any legislative body with regard to the
boundaries of the territory proposed to be annexed. Upon
the presentation of a proper petition, signed by the requisite
number of electors of the municipality, and exactly describ-
ing the territory desired to be annexed, the legislative body

of the municipality is compelled to immediately submit the question of annexation to the electors of the town and also to those of the outside territory. The question as to whether the exact territory described by the electors in their petition shall be annexed to and constitute a part of the municipality is made to depend solely upon an affirmative vote of the two bodies of electors, those of the municipality and those of the outside territory.

It is urged in support of the attack upon the constitutionality of this act that it delegates to private citizens of the municipality, and not to any legislative body or board recognized by the constitution, the absolute power to finally determine the boundaries of the territory proposed to be annexed. This, it is said, is a legislative power which under our constitution could only be delegated to some legislative body. We are of the opinion that there is under the provisions of our constitution no unwarranted delegation of legislative power herein, and that the act in respect to the objection made is violative of no constitutional provision. It is expressly provided by our constitution that corporations for municipal purposes shall not be created by special laws, and that "the legislature, by general laws, shall provide for the incorporation, organization, and classification in proportion to population, of cities and towns."· (Art. XI., sec. 6.) This provision necessarily includes not only the creation of new municipal corporations, but also the matter of adding new territory to an existing corporation and the exclusion of territory embraced in such a corporation from further connection therewith. As to all these matters, the legislature is limited to the enactment of general laws, under which municipal corporations may be created, or changes made in the boundaries of those already created, as local needs may demand. From the nature of things, the legislature cannot by general laws fix the boundaries of municipal corporations. It can do no more than provide the method by which boundaries can be fixed and the territory included therein impressed with the character of municipal territory. When it has done this, it has discharged all its legislative functions in this regard. In the absence of constitutional limitation on its power, it is authorized to adopt any method it sees fit. It has said, in effect, by the act under consideration,

that with certain prescribed limitations any territory shall become annexed to and a part of any existing city or town, whenever the electors of such territory shall manifest their desire for such annexation by giving a majority vote in favor thereof, and the electors of the city or town have manifested their assent in the same way. All else in the act, including the petition of twenty per cent of the electors of the town or city, has simply to do with the orderly method of obtaining the expression of the desire of the electors of the respective localities, the town and the outside territory, and the procurement of an official record of that expression. The petition of the electors is merely an initiatory step, making it the duty of a body capable of acting in such a matter to officially submit the proposition made by the petitioners, to the electors of the interested localities. The electors of each locality alone determine whether certain described territory shall become a part of the municipal corporation. If the electors of the outside territory vote in favor of such annexation, they expressly assent to and adopt as their own the boundaries designated in the petition for the election. The question, then, would appear to be simply whether the legislature by general laws may authorize the electors of any territory to determine for themselves whether such territory shall constitute a municipal corporation, or, with the assent of the electors of an existing municipality, constitute a portion of said municipality.

As has already been said, the principal objection to the method here adopted is the one relative to the fixing of the precise boundaries. The fixing of the boundaries of a municipality is ordinarily held to be the exercise of legislative power, but assuming it to be such in its nature, in view of the constitutional provision relative to the creation of municipal corporations, it does not follow that the legislature may not confer the power to declare the precise boundaries upon the electors of the district to be affected. The conferring of such power is not a delegation of legislative power at all, for the legislature is expressly prohibited from defining the boundaries. It fully exercised its own legislative power by the enactment of the general law in the matter. Necessarily, for the execution of such general law, the power to define the exact boundary-lines of each particu-

lar municipality created or enlarged after the adoption of
the constitution must be by such a law placed somewhere. We
find no provision in our constitution limiting the right of the
legislature to place this power with any tribunal or person, ex-
cept so far as such right may be limited by section 1 of article
III, wherein it is provided that the powers of the government
of the state of California shall be divided into three separate
departments, the legislative, executive, and judicial, "and no
person charged with the exercise of powers properly belonging
to one of these departments shall exercise any functions
appertaining to either of the others, except as in this con-
stitution expressly directed or permitted." Manifestly this
provision has no application. And it is as clear that section
13 of article XI, which provides that "the legislature shall
not delegate to any special commission, private corporation,
company, association, or individual, any power to make,
control, appropriate, supervise, or in any way interfere
with any county, city, town, or municipal improvement,
money, property, or effects, whether held in trust or other-
wise, or to levy taxes or assessments, or perform any munici-
pal functions whatever," has no application here. The fix-
ing of the boundaries of the territory to be annexed is in no
sense of the words a "municipal function." (See, generally,
*Fragley* v. *Phelan*, 126 Cal. 383, [58 Pac. 923].) There is
no constitutional provision that intimates that this power
can be conferred only on some legislative body, and not upon
the electors of the locality to be affected, and in the absence
of such a provision the question as to whether it shall be
given to the one or the other is purely one of policy, upon
which the determination of the legislature is conclusive. (See
*In re Madera Irr. Dist.*, 92 Cal. 296, 307, 318, [28 Pac. 272,
675, 27 Am. St. Rep. 106].)

There are one or two cases from other states in which a
contrary conclusion has been reached upon this question,
notably the case of *People* v. *Bennett*, 29 Mich. 451, [18 Am.
Rep. 107]. In regard to that case it must be observed that
the constitution of Michigan is materially different from ours,
in that it does not prohibit the legislature from creating
municipal corporations by special acts, but impliedly author-
izes such a course. (Art. XV, sec. 1.) It also contains a
provision expressly empowering the legislature to confer upon

boards of supervisors such powers of a local, legislative, and administrative character as they deem proper. (Art. IV, sec. 38.) Under such circumstances it might well be contended that the legislative power of fixing the boundaries of a municipality being in the legislature, that body must either act itself or through some inferior legislative body. Some portions of the opinion undoubtedly sustain plaintiff's contention, but they appear to us to be contrary to our well-settled rules relative to attacks upon acts of the legislature upon the ground of unconstitutionality. With us the legislature is supreme in legislative matters, except in so far as it is limited by the constitution, and he who seeks to overthrow its enactment must clearly point out the limitation which forbids the act. That case has never been approved by this court, except to the limited extent necessary to support its views in *Brandenstein* v. *Hoke,* 101 Cal. 131, [35 Pac. 562], where an act requiring the board of supervisors, upon the mere receipt of a petition from persons in possession of more than one half of the acres of any specified portion of the county asking that the same be constituted a levee district, to make an order accordingly, was held to be violative of fundamental principles of constitutional law. There is an obvious distinction between such an act, which practically authorizes property-owners without notice to place burdens upon the property of others for the sole purpose of improving their own property, and one providing for the annexation of territory to a municipality only by a majority vote of the electors in such territory, given at an election which is held only after due notice. Assuming any notice of such proceedings to be essential, sufficient notice to all interested parties is here provided for, but we do not understand that the requirement as to due process of law gives a property-owner an absolute right to notice and hearing before his property may be included within the limits of a municipality.

In this connection, the language of this court in *In re Madera Irr. Dist.,* 92 Cal. 296, 323, [28 Pac. 272, 675, 27 Am. St. Rep. 106], wherein this court was considering a similar objection to an act relative to irrigation districts, is applicable. The court there said: ''The constitutionality of the act in question is further assailed upon the ground

that it makes no provision for a hearing from the owners of the land prior to the organization of the district. But the steps provided for the organization of the district are only for the creation of a public corporation to be invested with certain political duties which it is to exercise in behalf of the state. (*Dean* v. *Davis,* 51 Cal. 406.) It has never been held that the inhabitants of a district are entitled to notice and hearing upon a proposition to submit such question to a popular vote. In the absence of constitutional restriction, it would be competent for the legislature to create such public corporation, even against the will of the inhabitants. It has as much power to create the district in accordance with the will of a majority of such inhabitants. It must be observed that such proceeding does not affect the property of any one within the district, and that he is not by virtue thereof deprived of any property. Such result does not arise until after delinquency on his part in the payment of an assessment that may be levied upon his property, and before that time he has opportunity to be heard as to the correctness of the valuation which is placed upon his property, and made the basis of his assessment. He does not, it is true, have any opportunity to be heard, otherwise than by his vote, in determining the amount of bonds to be issued or the rate of assessment with which they are to be paid; but in this particular he is in the same condition as is the inhabitant of any municipal organization which incurs a bonded indebtedness, or levies a tax for its payment. His property is not taken from him without due process of law, if he is allowed a hearing at any time before the lien of the assessment thereon becomes final." The conclusion we have reached upon this branch of the case is sustained by the cases of *People* v. *Fleming,* 10 Colo. 553, [16 Pac. 298], and *Ford* v. *North Des Moines,* 80 Iowa, 626, [45 N. W. 1031], in both of which the matter is exhaustively discussed and many supporting authorities cited.

It is further urged that the statute is unconstitutional because it provides for a judicial determination by the city council, without giving the parties affected any notice, knowledge, or day in court. The point of this objection is, that inasmuch as it is the implied duty of the city council to determine the existence of the facts essential to its jurisdic-

tion to order an election,—viz., that the petition is in fact signed by the requisite number of electors (*People* v. *Los Angeles*, 133 Cal. 338, 342, [65 Pac. 749]), and also as to whether the boundaries of the territory proposed to be annexed are set forth with sufficient certainty (*People* v. *Oakland*, 123 Cal. 598, 606, [56 Pac. 445]),—the city council in so doing makes a determination judicial in nature, without notice to persons whose property, in the event that the proposition is carried at the election, will be brought within the municipality. This may be conceded, but it does not follow that the determination thus made in any way so affects property rights as to make previous notice essential. The utmost effect of such determination is the submission to popular vote of the proposition, and property rights are in no way affected thereby. The quotation from *In re Madera Irr. Dist.*, 92 Cal. 296, [28 Pac. 272, 27 Am. St. Rep. 106], made in discussing a former objection, is applicable here.

2. Portions of the territory annexed were uninhabited, and it is claimed that there could be no annexation of any such lands except by proceedings taken under the act of 1899, providing for the annexation of uninhabited territory. (Stats. 1899, p. 37, c. 41.) Uninhabited land is to be found in probably every settled community in the state, and we cannot conceive of any case of original incorporation or annexation to an existing municipality of inhabited territory that would not almost necessarily include some parcels of land not actually inhabited.

Upon this branch of the case, a full consideration of the acts of the legislature satisfies us that the act of 1899 was never designed to in any way affect any of the provisions of the act of 1889, but was intended solely to afford a method by which territory absolutely uninhabited, and therefore incapable of annexation under such act, being without electors to vote upon the proposition, might be annexed. It is expressly provided in section 5 of the act of 1899 that ''nothing in this act shall be deemed to repeal the provisions of any act now providing for the annexation of inhabited territory.'' If the ''territory'' proposed to be annexed, regarded as a unit, is inhabited, the proceedings must be had under the act of 1889, regardless of the number of parcels of land included therein that are uninhabited. Any other

construction of the act of 1899 would materially affect the act of 1889, which it is clearly indicated was never intended.

3. It is contended that the board of trustees of Ontario never acquired jurisdiction to order an election, for the reason that it never investigated as to the sufficiency of the petition, or made any judicial determination as to whether the petition contained the genuine signatures of the requisite number of electors. The minute entry of the board was as follows, viz.: "A petition was presented to the board signed by thirty-one of the qualified electors of the town of Ontario, praying that an election be called for the purpose of submitting to the electors the question whether certain territory described in said petition should be annexed to, incorporated in, and made a part of the municipal corporation of the town of Ontario. The petition asking for an election as above stated was taken up and discussed, and the following resolution was passed by a unanimous vote: 'A petition having been presented, signed by more than one fifth of the qualified electors of the town of Ontario, computed upon the number of votes cast at the last general municipal election, it is therefore carried by the following vote: Ayes, Rothermal, Harper, Miller, Armstrong; noes, none. Resolved and ordered by the board of trustees of the town of Ontario, that a special election be and the same is hereby called to be held on April 15, 1901, in the manner and for the purposes provided in the following notice of election, and the clerk is hereby instructed to have printed the said notice of election according to law.'" And then follows a notice of special election. The duty of a board of trustees to determine whether or not a petition for an annexation election is signed by a sufficient number of electors is entirely implied from the fact that it has no power to order the election except upon a petition signed by that number. The statute nowhere in terms prescribes the necessity of such a determination, or requires any record thereof to be made. It is the petition signed by the requisite number that gives the power and creates the duty, and not the determination of the board as to the sufficiency of that petition. And herein such a case differs from that of *Bedell* v. *Scott,* 126 Cal. 675, [59 Pac. 210], relied on by plaintiff, wherein the statute empowered the board of supervisors to authorize the collection

of tolls on a public highway, "whenever in their judgment the expense necessary to operate or maintain such public road or highway as a free public highway is too great to justify the county in so operating or maintaining" it. There the determination or judgment of the board upon the matter specified was the essential to jurisdiction. Here it is the presentation of a petition sufficiently signed that not only gives the power, but requires the board to submit the proposition to the voters. Whatever may be the true rule in cases like that of *Bedell* v. *Scott*, 126 Cal. 675, [59 Pac. 210], we think that in a case of this character it is not essential, in the absence of any statutory provision requiring it, that any record of the determination of the board as to the sufficiency of the petition should be made, other than is evidenced by the order submitting the proposition to the electors. This necessarily implies a finding on the part of the board as to the existence of the facts necessary to confer the power to act. In Freeman on Judgments (sec. 523), speaking of a similar matter, it is said, quoting approvingly from a decision: "And it is not necessary that the record of the board shall show an express finding upon such facts. Such findings will be presumed in support of the proceedings, if the record shows an order granting the petition, or for the taking of the steps necessary to the accomplishment of the end designed." (See, also, *Chase* v. *Trout*, 146 Cal. 350, 369, [80 Pac. 81], and cases there cited.) In this connection it will, however, be observed that the resolution expressly recites that a petition signed by more than one fifth of the electors, etc., had been presented, and we know of no good reason why this should not be held to substantially show the determination of the board in regard thereto, assuming the necessity of such showing.

Much of what has been said is also applicable to the contention based upon the fact that the minute entry of the board does not show that the board received sworn evidence as to the genuineness of the signatures, or made any other investigation than such as may reasonably be implied from the words "was taken up and discussed." The statute no more requires the record of the board to affirmatively show the manner in which it satisfies itself as to the sufficiency of the petition than it requires such record to expressly show the determina-

tion of the board as to such sufficiency. The making of the order for the election implies not only the determination, as we have already seen, but also that such determination was reached upon proofs satisfactory to the board. The statute makes no provision as to the character of proof essential in such a case. Whatever may be the rule applicable in *certiorari,* which is a direct attack upon the particular order alleged to have been in excess of jurisdiction (see *Stumpf* v. *Board of Supervisors,* 131 Cal. 364, [63 Pac. 663, 82 Am. St. Rep. 350]), the decisions in this state compel us to hold that even an implied finding is conclusive in a *quo warranto* proceeding, or in any case where the order is collaterally attacked. There is no difference in this regard between a finding expressed in the record and one implied from proceeding as though the fact had been ascertained to exist. They are equally conclusive whereever by the statute the board or tribunal is vested with authority to determine whether such a petition is sufficiently signed before proceeding thereon. (See Freeman on Judgments, sec. 531.) As said by the same author in the section already quoted (523) : ''The only difficulty in cases of this class is in deciding whether the board is vested with authority to determine that it is properly signed, or, in other words, whether it is empowered to decide upon its own jurisdiction. This power need not be conferred in express terms.'' This court has repeatedly held that statutes of a similar character give such power to the tribunal to which the petition is presented, and that the very act under consideration gives such power to the board to which the petition is presented, and that its conclusion thereon is beyond review and final so far as *quo warranto* proceedings are concerned, was definitely decided in *People* v. *Los Angeles,* 133 Cal. 338, [65 Pac. 749]. Under the decisions the order of the board calling the election must here be taken as conclusive evidence that the petition presented, sufficient on its face, was in effect sufficiently signed by electors to confer the requisite power, and that the finding of the board to that effect, be it express or implied, was sustained by satisfactory proof.

4. There was sufficient evidence to support the finding of the trial court to the effect that the petition was received and acted upon at a regular adjourned meeting of the board

of trustees. The only basis for the objection that the meeting was not a legally assembled one is that the requisite ordinance fixing the time of meetings was not introduced in evidence. The minutes received in evidence purported on their face to be the minutes of certain regular and regular adjourned meetings of said board. The meeting purporting to be a regular meeting, and from which the first adjournment was taken, was held at the regularly appointed place on the first Tuesday of March, 1901. There was evidence showing that the monthly meetings of the board were held on the first Tuesday of each month, from the time of the organization down to a date subsequent to these proceedings, when the ordinance relative to the time of meeting was changed. There was no pretense on the trial that the meeting was not what the minutes indicated it to be,—viz., a regular adjourned meeting. In view of these facts the finding is sufficiently supported. (See Code Civ. Proc., sec. 1920.)

5. All the objections made as to the failure of the board by order to appoint election officers, establish election precincts, fix polling-places, and prescribe the manner and time of publication of notice, are answered by the resolution shown by the minute entries in evidence. The resolution provides: "It is therefore resolved and ordered by the board of trustees of the town of Ontario, that a special election be and the same is hereby called to be held on April 15, 1901, in the manner and for the purposes provided in the following notice of election, and the clerk is hereby instructed to have printed the said notice of election according to law." Then follows the notice referred to, which is complete in every respect above mentioned. Among other things it specified the papers in which and the time for which it should be published, leaving nothing to the discretion of the clerk, as in the case of *People v. Linden,* 107 Cal. 94, 100, [40 Pac. 115]. This notice was in effect made a part of the order or resolution of the board, and whatever was prescribed therein was ordered by the board.

6. The notice of election was given in the manner ordered by the board. It was not necessary that the notice should be signed by the members of the board, the statute simply prescribing that the board shall "cause notice to be given."

A notice signed by the acting president of the board and attested by the town clerk and published by order of the board clearly answered every requirement.

7. The statute requires the notice to be published in a newspaper printed and published in the city or town, and "also in a newspaper, if any such there be, printed and published outside of such corporation, but in the county," etc. The evidence was ample to sustain the finding that the Ontario Observer, a newspaper in which the notice was published under the order of the board, was both printed and published outside of the town of Ontario as it existed prior to the annexation.

8. The statute provides that in the notice, the electors "shall be invited to vote upon such proposition by placing upon their ballots the words 'For annexation' or 'Against annexation,' or words equivalent thereto." The notice simply provided: "All ballots cast at such election shall contain the words 'For annexation' or 'Against annexation,' or words equivalent thereto." The ballots actually used at the election conformed generally to the so-called Australian ballot law, and, so far as material, were as follows, viz.:

"Municipal Election.

"For the Annexation of Territory to the Town of Ontario.

"To vote for the proposition of annexation, stamp a cross (X) in the square opposite and to the right of the word 'Yes'; to vote against the proposition of annexation, stamp a cross opposite and to the right of the word 'No.'

| (1)   For annexation | Yes | |
|----------------------|-----|--|
| (2)   For annexation | No  | |

These ballots were caused to be printed by the town clerk, and were delivered by him to the election officers appointed by the board.

In regard to the objection made by plaintiff upon these facts, the learned judge of the trial court said, in his opinion filed in deciding the case: "The resolution apparently was drafted in accordance with the language found in the statute as to the general form of the ticket; but as the statute was passed prior to the adoption of the present ballot law, the resolution contained such language as to make the ballots conformable to such law. As I view it, there was no such material

and substantial difference between the form of ballot prescribed by the resolution and the form actually used, as to make the cases of *City* v. *Fitzgerald,* 126 Cal. 279, [58 Pac. 699], or *Los Angeles* v. *Hance,* 130 Cal. 278, [62 Pac. 484], cited by plaintiff's counsel, or the earlier and leading case of *Murphy* v. *San Luis Obispo,* 119 Cal. 624, [51 Pac. 1085], not cited by counsel, applicable herein. (*People* v. *Los Angeles,* 133 Cal. 338, [65 Pac. 749].) There was no express direction in the notice in the resolution as to the manner of voting to be adopted, and therefore the direction on the ballot that the voter should vote by placing a cross after either 'Yes' or 'No,' to indicate his support of or opposition to the annexation, could not be misleading because contrary to the express directions theretofore received. The ballot used was unambiguous, and the voter's intention could easily and plainly be indicated thereon. The court say in the case last cited: 'In the absence of any direction, the manner in which the voter is to indicate his wish may be immaterial so long as his wish can be ascertained.' Here there was no direction as to the manner in which the voter should indicate his wish, and the only direction on the subject at all related to the form of the ballot to be used, and that was substantially complied with. I can see no error in connection with the ballot used.'' These views and the conclusion expressed are adopted as the views and conclusion of this court. We find nothing in other points made as to the validity of the proceedings before the town council or the election that requires consideration here. We have examined each of the assignments of error, and find no prejudicial error on the part of the trial court.

The judgment and order denying a new trial are affirmed.

Shaw, J., Lorigan, J., Henshaw, J., and McFarland, J., concurred.

Beatty, C. J., dissented.

ANGELLOTTI, J.—The opinion heretofore filed in the above-entitled matter is hereby modified as follows, viz.: The second paragraph of that portion thereof relating to the effect of the act of 1899 (Stats. 1899, p. 37, c. 41), providing for the annexation of uninhabited territory, commencing with the

words "Upon this branch of the case," is stricken out, and the following is inserted in lieu thereof:

"Upon this branch of the case, a full consideration of the acts of the legislature satisfies us that the act of 1899 was never designed to in any way affect any of the provisions of the act of 1889, so far as territory which, taken as a whole, may fairly be said to be inhabited territory is concerned, and the evidence in the case at bar was such as to sustain the conclusion of the court below to the effect that the territory here annexed was of that character, notwithstanding. the presence of several uninhabited tracts or parcels, each exceeding five acres in area. If the 'territory' proposed to be annexed, regarded as a whole, may fairly be said to be inhabited, the proceedings must be had under the act of 1889, regardless of the number of parcels of land included therein that are uninhabited. Any other construction of the act of 1899 would materially affect the act of 1889, which, it is clearly indicated, was never intended. It is expressly provided in section 5 of the act of 1889 that 'nothing in this act shall be deemed to repeal the provisions of any act now providing for the annexation of inhabited territory.' "

Sloss, J., Shaw, J., Lorigan, J., Henshaw, J., McFarland, J., concurred.

BEATTY, C. J., dissenting.—The point covered by this modification of the original opinion is that upon which my dissent was principally based. As the opinion stood when filed, it amounted to this: That if one acre of a thousand of the proposed addition was inhabited the whole could be annexed under the act of 1889, regardless of the provisions of the act of 1899. The modification now made restricts the right to annex under the act of 1889 to the territory which, "regarded as a whole, may fairly be said to be inhabited." But when may a tract be fairly said to be inhabited? Must the inhabited part amount to one half, or will one fourth or one tenth or one hundredth suffice, and where will be found a rule of decision? If one half of the territory sought to be annexed must be inhabited, this proceeding was invalid. I think, indeed, that not one fourth of it was inhabited. But in my opinion no uninhabited lands can be annexed under the act of

1889. To hold that they can is to nullify the act of 1899. To hold that they cannot is not to nullify, but only to restrict, the operation of the act of 1889, and where the two acts conflict the later must control. There are without doubt many inhabited tracts adjoining existing corporations, and upon them the act of 1889 remains operative. It is therefore not repealed by the act of 1899, and the only restriction which the later act imposes upon itself is that it shall not repeal the earlier act. An act which has any practical operation is not repealed. The court seems to think that a point should be strained to continue the act of 1889 in the full and unrestricted operation which it had before the act of 1899. I think, on the contrary, that the earlier act deserves no favors. It is as gross an instance of improvident legislation as can be found in our statute-books, and if it were, what it is not, deprived of all effect by the later act, we could afford to wait with perfect equanimity until the legislature, by a repeal of both acts and a revision of the whole subject, put the power of annexation under such restrictions as to prevent the abuses of which the act of 1889 is susceptible, and of which I think these proceedings are a vivid illustration.