[Civ. No. 2800.   Second Appellate District, Division One.—April 18, 1919.]

THE PEOPLE ex rel. CITY OF PASADENA et al., Appellants, v. CITY OF MONTEREY PARK, etc., et al., Respondents.

[1] MUNICIPAL CORPORATIONS — ANNEXATION PROCEEDINGS — ORGANIZATION OF CITY—OVERLAPPING OF TERRITORY—JURISDICTION OF SUPERVISORS.—After a valid petition for annexation, pursuant to the Annexation Act of 1913, is received and acted upon by the commission of the city to which the territory is proposed to be annexed and an annexation election is called, the board of supervisors of the county have no jurisdiction to entertain and act upon a petition calling for proceedings to organize a city including a part of the same territory while the annexation proceedings are pending.

[2] ID.—CONSTRUCTION OF SECTION 7 OF ANNEXATION ACT—SCOPE OF ACT.—Section 7 of the Annexation Act of 1913, as amended in 1915, is merely declaratory of existing law, and was intended to declare and place beyond doubt the disability of one city to annex territory during the pendency of proceedings by another city to annex the same territory, and was not enacted as a limitation of the jurisdiction of the municipality first acting in the matter. The creation of a new and separate municipal corporation through the action of the county authorities and including the territory proposed to be annexed is not a part of the subject matter of the Annexation Act.

[3] ID.—CASE AT BAR — IMPROPER CLASSIFICATION OF TERRITORY.—In this action the petition for annexation showed that the proceedings were on their face an attempt by the flimsiest subterfuge to treat as inhabited various uninhabited tracts of land, and to annex them

under the proceedings prescribed by a statute which applies solely to annexation of inhabited territory.

[4] ID.—STATUS OF TERRITORY—DECISION OF COMMISSION NOT FINAL.— Assuming that the question whether or not all the territory included in an annexation petition is inhabited is regularly submitted to and decided by the commission of the city to which such territory is sought to be annexed, such decision is not final where the annexation petition "on its face" is not sufficient.

[5] ID.—ANNEXATION PROCEEDINGS INVALID — JURISDICTION OF SUPERVISORS TO ENTERTAIN INCORPORATION PROCEEDINGS.—Where, as in this case, there is in fact no valid pending annexation proceeding in existence at the time affecting any of the territory included in the proceedings for the incorporation of the new city, the board of supervisors is authorized to receive and act upon a petition for such incorporation.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, John Munger, City Attorney of Pasadena, William Hazlett, City Attorney of South Pasadena, Alfred Barstow, City Attorney of Alhambra, and Rohe & Jeffers for Appellants.

Thomas A. Berkebile for Respondents.

CONREY, P. J.—This is an action in the nature of *quo warranto* in which the plaintiffs challenge the right of the defendants to exercise the franchise of a city and its respective offices. The plaintiffs claim that by virtue of certain proceedings begun on the seventeenth day of April, 1916, and completed on the fourteenth day of August, 1916, certain territory was annexed to and became a part of the city of Alhambra. Defendants claim that by proceedings begun on the eighth day of May, 1916, and completed on the twenty-ninth day of May, 1916, the city of Monterey Park became a municipal corporation of the sixth class. The alleged city includes territory which was a part of the territory included in the annexation proceedings. The annexation proceedings were conducted under the Annexation Act of 1913, [Stats. 1913, p. 587], and the incorporation proceedings were conducted under the Municipal Corporations Act of 1883, [Stats.

1883, p. 93]. Both of the proceedings in question were con-
ducted according to the regular forms of procedure provided
by the respective statutes.

[1]. The first proposition urged by appellants is that, since
the petition for annexation was received and acted upon by
the commission of the city of Alhambra and an annexation
election had been called prior to the commencement of the
proceedings for the organization of the city of Monterey Park,
the board of supervisors of Los Angeles County did not have
jurisdiction to entertain and act upon a petition calling for
proceedings to organize a city including a part of the same
territory while the annexation proceedings were pending.
In considering this contention let it be assumed that valid
annexation proceedings were pending at the time when the
incorporation proceedings of defendant city were commenced.
The question involved does not appear to have been passed
upon by the courts of this state. The only decisions referred
to in the briefs are those cited by appellants, and they all
sustain the proposition stated. Especially in point are *People*
v. *Morrow*, 181 Ill. 315, [54 N. E. 839] ; *Taylor* v. *City of Ft.
Wayne*, 47 Ind. 274; *Independent District of Shelton* v. *Board
of Supervisors*, 51 Iowa, 658, [2 N. W. 590]. The Illinois
decision contains a statement of the other two cases, and the
court said: "As between courts of co-ordinate jurisdiction,
the tribunal first acquiring jurisdiction retains it, and is not
to be interfered with by another co-ordinate court. The rea-
son of the rule is that otherwise confusion and conflict would
arise. Here power is given over the same territory to two
parties authorized to act,—one a city council or board of
trustees, who may attach it to a municipality to which it is
adjacent; the other, a majority of the legal voters within its
boundary, who may organize it into a village." Further
along it is said: "It cannot, we think, be presumed that the
legislature intended to give citizens and legal voters of cer-
tain territory the power to organize a village, and at the same
time authorize other parties, by a subsequent proceeding, to
defeat that right; and it is clear that to hold otherwise would
be to bring into conflict, resulting in confusion, the two
opposing powers, or, speaking in a general sense, jurisdic-
tions. Had the petition for annexation been first presented
to the city council, and its action postponed from time to
time, until, by a subsequent proceeding, the organization of

the territory into a village had been perfected, the same question would be presented, and we do not think in that case it could reasonably be held that the power of the city council to carry out the annexation proceeding would be defeated. The question, as it arises under our statute and decisions, is a new one, and not wholly free from difficulty, but we think the foregoing views are sustained by both reason and authority."

Respondents endeavor to break the force of these decisions in two ways. First, they say that the rule to the effect that when courts have concurrent jurisdiction of the same subject matter the first that assumes jurisdiction excludes the other, does not apply unless the parties are the same or stand in privity to each other and the points in litigation or the redress sought in both courts are identical. They insist that in each of the three cases above mentioned the territory over which the two municipalities sought to acquire jurisdiction was identical, whereas in the case at bar it is not identical, and that this fact creates an exception which takes the case out of the general rule. Reference to the decisions above cited, however, shows that the territory involved in the respective opposing proceedings was not identical, except in the Illinois case. Nor do we think that the fact that one proceeding includes some territory not included in the other is alone sufficient to take the case out of the rule.

[2] The other contention urged by respondents in opposition to the proposition stated is based upon the provisions of section 7 of the Annexation Act of 1913, as amended in 1915. (Stats. 1915, p. 309.) That section deals with the exclusiveness of annexation proceedings first instituted by one city as against annexation proceedings affecting the same territory and instituted by another city while the first proceedings remain pending. As to a controversy arising out of such conflicting annexation proceedings, the statute speaks unnecessarily, if the unwritten law relied upon by appellants, and to which we have already referred, would be applicable to such a case. We are satisfied that it would so apply and that section 7 is merely declaratory of existing law. Respondents argue, however, that by reason of the enactment of section 7 the legislature sought to fix and limit the jurisdiction of a municipality attempting to annex under that act, and that it should be presumed that the legislature expressed

all it intended to express and granted all jurisdiction that it intended to grant to municipalities annexing thereunder. They say that the legal maxim applies, "*expressio unius est exclusio alterius.*" We think, however, that section 7 was intended to declare and place beyond doubt the disability of one city to annex territory during the pendency of proceedings by another city to annex the same territory, and was not enacted as a limitation of the jurisdiction of the municipality first acting in the matter.   The creation of a new and separate municipal corporation through the action of the county authorities and including the territory proposed to be annexed is not a part of the subject matter of said section 7. That section and the entire act in which it is included dealt solely with the subject of annexations and not with the original creation of municipal corporations.

We come now to the question whether, as contended by respondents, the annexation proceedings were in fact void.   The territory included in the annexation proceedings was in those proceedings treated as one tract of inhabited territory adjoining the city of Alhambra.   Its real character was that of a series of parcels of land.   This is made manifest by anaylsis of the description, and is exhibited to the eye by inspection of defendants' exhibit "A," which is shown in the transcript.   The entire territory contains 661.82 acres, far the greater part of which is, and at all. times herein mentioned was, a tract of land belonging to the relators, situated nearly two miles south of the south boundary of the city of Alhambra, as that city was constituted on the seventeenth day of April, 1916.   For convenience, this tract is in the record called "new sewer farm."   The remainder of the annexation territory consists of (1) three narrow strips (nowhere more than three hundred feet wide), which run around the north, the east and the south sides of a tract of land designated in the record as "old sewer farm," which belongs to the city of Pasadena and is located immediately east of the city of Alhambra; (2) five strips of land connecting the three abovementioned strips with the new sewer farm.   These five strips consist of (a) a parcel thirty feet wide, being the south half of that part of Hellman Avenue; (b) a parcel seventy feet wide, being the entire width of Garfield Avenue; (c) a parcel sixty feet wide, being the entire width of Newmark Avenue;

(d) a parcel seventy feet wide, being the entire width of Ramona Avenue; (e) a parcel fifty feet wide and approximately one mile in length, extending southwesterly from Ramona Avenue to the new sewer farm. The only inhabitants of the annexation territory were eight persons who lived in three houses, all of which were situated on one acre on the strip lying east of the old sewer farm, at a point 3.54 miles from the north limits of the new sewer farm. The highways included in the annexation territory extend through a thickly populated section of Monterey Park, and the lines of annexation were so drawn that they exclude thirty-one electors, thirty-eight homes, and ninety-three inhabitants living along and adjacent to said highways. Also the lines were so drawn that the ranch house and inhabitants thereof on the new sewer farm were eliminated from the annexation territory, as was also a power station and cottage located on an adjacent corner to the new sewer farm. These lines of exclusion made indentations into the area which naturally was a part of the same territory with the new sewer farm. The result of these exclusions was that all of the tracts involved in the annexation territory were uninhabited, except the tract on which said eight persons lived. These eight persons were all employees working on the old sewer farm, and they were the sole signers of the petition by which the annexation proceedings were instituted.

[3]  On these facts it is too plain to admit any doubt that the annexation proceedings were on their face an attempt by the flimsiest subterfuge to treat as inhabited various uninhabited tracts of land, and to annex them to the city of Alhambra under the form of proceedings prescribed by a statute which applies solely to annexation of inhabited territory. It is likewise clear that such proceedings were a palpable fraud upon the inhabitants of the community through whose lands the cord of connection was run from the land adjoining Alhambra to the limits of the new sewer farm. The annexation petition showed on its face that several of the parcels included were public highways and that therefore they could not be inhabited territory.

"It is not disputed that there are in force in California three separate statutes under which annexations of territory to municipalities may be made: Act of 1889 (Stats. 1889,

p. 358), of 1899 (Stats. 1899, p. 37), and of 1913 (Stats. 1913, p. 587). The distinctive features of these acts, as far as germane to the present consideration and pointed out by respondents, are as follows: (1) Act of 1889 for annexation of inhabited territory upon petition of electors of existing city; (2) act of 1899 for annexation of uninhabited territory; (3) act of 1913 for annexation of inhabited territory upon petition of electors in territory proposed to be annexed, which territory may be either (a) one body (sections 2 to 4), or (b) two or more bodies, which must be submitted as separate propositions (section 6)." (*People* v. *City of Lemoore,* 37 Cal. App. 79, [174 Pac. 93].)

*People* v. *Town of Ontario,* 148 Cal. 625, [84 Pac. 205], was an action to determine the validity of municipal annexation proceedings. The original city area was in the form of a square. The proposed annexation was of a broad band of territory completely surrounding the city. It was claimed that some of the included parcels of land were uninhabited, and therefore could not be annexed except by proceedings under the act of 1899. In response to this claim, the court (page 641) said: "Upon this branch of the case, a full consideration of the acts of the legislature satisfies us that the act of 1899 was never designed to in any way affect any of the provisions of the act of 1889, so far as territory which, taken as a whole, may fairly be said to be inhabited territory is concerned, and the evidence in the case at bar was such as to sustain the conclusion of the court below to the effect that the territory here annexed was of that character, notwithstanding the presence of several uninhabited tracts or parcels, each exceeding five acres in area. If the 'territory' proposed to be annexed, regarded as a whole, may fairly be said to be inhabited, the proceedings must be had under the act of 1889, regardless of the number of parcels of land included therein that are uninhabited. Any other construction of the act of 1899 would materially affect the act of 1889, which, it is clearly indicated, was never intended. It is expressly provided in section 5 of the act of 1889 [1899] that 'nothing in this act shall be deemed to repeal the provisions of any act now providing for the annexation of inhabited territory.' " There may be cases wherein it would be difficult to pass upon the question whether a described territory "regarded as a

40 Cal. App.—46

whole, may fairly be said to be inhabited," and wherein, therefore, a court would not readily disregard the action of municipal authorities in such proceedings. But in the case at bar the fact that several distinct portions of the territory were uninhabited is not only admitted, but, as we have shown, necessarily appears from the description contained in the annexation petition, which description is repeated in the subsequent resolution, ordinance, notices of election, and certificate, by means of which the annexation proceedings were conducted and completed.

Appellants contend that the defense based upon the invalidity of the annexation proceedings cannot be maintained, because such defense comes by way of collateral attack in a *quo warranto* case. They say that *quo warranto* is not a proceeding wherein the court may inquire into the question whether the commission of the city of Alhambra did or did not wholly and fairly and completely do and determine everything necessary to be determined when they granted the petition for annexation and annexed the territory in question. They rely upon *People* v. *Town of Ontario*, 148 Cal. 625, [84 Pac. 205], where it was held that in a *quo warranto* proceeding the determination of the city board of trustees affirming the genuineness and numerical sufficiency of the signatures to the petition would not be inquired into in such proceeding, and that the findings and determination of the board must be deemed conclusive "in a *quo warranto* proceeding, or in any case where the order is collaterally attacked." In further elucidation of the basis upon which its conclusions rested, the court said: "Under the decisions the order of the board calling the election must here be taken as conclusive evidence that the petition presented, sufficient on its face, was in effect sufficiently signed by electors to confer the requisite power, and that the finding of the board to that effect, be it express or implied, was sustained by satisfactory proof."

[4] Assuming, without deciding, that the question whether or not all of the territory included was inhabited, was regularly submitted to and decided by the commission of the city of Alhambra, such decision is not final in this case. This is so because, for the reasons which we have stated, the petition was "on its face" *not* sufficient. And it is worthy of notice that in *People* v. *City of Lemoore, supra,* which was an action

"in the nature of *quo warranto*," the judgment pronouncing against the validity of annexation proceedings was founded upon a complaint which charged that certain parcels of land included in the attempted annexation were in fact not inhabited. These allegations were treated as material and as tendering issues upon which evidence could have been received, and the judgment (entered on default of answer after an order overruling defendants' demurrer to the complaint) was affirmed.

[5] Since, therefore, there was in fact no valid pending annexation proceeding in existence on the eighth day of May, 1916, affecting any of the territory included in the proceedings for incorporation of the city of Monterey Park, it follows that the board of supervisors was authorized to receive and act upon the petition for such incorporation, and that the incorporation proceedings, conceded to be regular in form are valid.

The judgment is affirmed.

Shaw, J., and James, J., concurred.