[Civ. No. 17186. First Dist., Div. Two. May 2, 1957.]

UNITED STATES PIPE AND FOUNDRY COMPANY (a Corporation) et al., Respondents, v. THE CITY COUNCIL OF THE CITY OF HAYWARD et al., Appellants.

John W. Scanlon, City Attorney, and Robert T. Anderson for Appellants.

Rutherford, Jacobs, Cavalero & Dietrich, D. R. Jacobs and Mark S. Bray for Respondents.

DRAPER, J.—This appeal involves the validity of proceedings by which the city of Hayward sought to annex territory designated as Treeview Annex. The annexation proceedings were commenced under the Annexation Act of 1913 (Gov. Code, §§ 35100-35158). After protest hearing an election was called. Before the election, a petition for writs of mandamus and of review was filed. After trial, the annexation proceedings were found invalid, and peremptory writ of mandate issued, terminating the annexation. Council and city appeal.

The basis of the trial court's action was its determination that substantial and clearly separable and distinguishable portions of the territory proposed for annexation were uninhabited, and thus subject to annexation only under the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, §§ 35300-35326).

A proceeding under the 1913 Act is void if it seeks annexation of a substantial area which is uninhabited and is clearly separable and distinguishable from the inhabited portion of the lands sought to be annexed (*Johnson* v. *City of San Pablo,* 132 Cal.App.2d 447 [283 P.2d 57]; *People* v. *City of Monterey Park,* 40 Cal.App. 715 [181 P. 825]; *Capuchino Land Co.* v. *Board of Trustees,* 34 Cal.App. 239 [167 P. 178] [the last was under the act of 1889]). Of course, this rule does not bar the inclusion in such a proceeding of parcels of uninhabited land when the annexation area as a whole can fairly be said to be inhabited (*Rogers* v. *Board of Directors,* 218 Cal. 221 [22 P.2d 509]; *People* v. *Town of Ontario,* 148 Cal. 625 [84 P. 205]). Any other construction would wholly negate the use of the 1913 Act in the great majority of cases. However, where the uninhabited area is a substantial portion of the whole, and is separable and distinguishable from the inhabited area, the rule clearly applies.

Appellants argue that ''the extent of the area to be annexed is a political question and not a matter for judicial

determination." This, of course, is true (*People* v. *City of Los Angeles*, 154 Cal. 220 [97 P. 311]; *Peart* v. *Board of Supervisors*, 145 Cal.App.2d 8 [301 P.2d 874]). But this political discretion cannot extend the scope of the statute. Whether uninhabited territory is improperly included in the annexation is a question for the courts (*Capuchino Land Co.* v. *Board of Trustees, supra,* 34 Cal.App. 239).

■ Appellants next contend that the evidence is insufficient to support the findings that substantial, separate and distinguishable uninhabited areas exist within the proposed annexation. Appellants suggest that this court must review the evidence and reach its own conclusion thereon, independent of the findings of the trial court. No authority is cited for this contention and it is clear that the general rule applies here. The question before us is whether there is substantial evidence to sustain the findings of the trial court (*Johnson* v. *City of San Pablo, supra,* 132 Cal.App.2d 447, 452). We therefore review the evidence only to determine whether it meets this test.

■ Treeview Annex lies southerly of Hayward. Three railroad lines traverse the area in a general north-south direction. Toward the easterly side, closely adjoining lines of the Southern Pacific and Western Pacific are generally parallel. The westernmost of these lines is referred to as the Decoto rights of way. In the western section of the area is another line of the Southern Pacific, here referred to as the Newark right of way. Both rights of way are built upon fill which raises them above the level of the adjoining land. The Decoto rights of way are as much as 25 feet above the lands on either side. The fill for the Newark right of way through portions of this annex is about 50 feet wide at the base and 16 feet at track level, with a ditch below ground level on each side. The surface of this right of way is as much as 8 feet above the land on either side.

East of the Decoto rights of way, the annexation area contains 396 acres. This area includes the Hillview Crest tract of more than 600 homes, together with a golf course.

Between the Decoto and Newark rights of way, the annexation area contains 1,721 acres. This area includes industrial plants of Holly Sugar Corporation, American Pipe and Construction Company and United States Pipe and Foundry Company. Land not occupied by these plants is used principally for agricultural purposes. But few roads cross the Decoto rights of way to connect this area with the easterly

portion of the annexed land. The parties agree that 9 registered voters and 12 persons who were not registered voters lived in this area. Appellants contend, and respondents deny, that three others, George W. and Edith D. Loorz and Daniel Riley, were registered voters living within this area.

West of the Newark right of way lie 266 acres. This area contains three ponds maintained by duck hunting clubs. There was testimony that the remaining land in this section is used largely for raising of duck feed or is uncultivated. Some is used for agriculture and pasture, but the land is frequently flooded in the rainy season and is poor land. Only one road, not open to the public, connects this section with the rest of the annex. No one lives in this section.

Zoning of the area east of the Decoto rights of way is residential. The golf course is allowed in an R-1 zone with a use permit, and is supplemental to the residential use of the area. The bulk of the area to the west is differently zoned. It includes substantial heavy industrial plants, together with farm lands. The plant areas are zoned for industrial use. Most of the remainder is in a "U" zone which permits uses which are only slightly restricted. Its only residences, aside from that of the caretaker for a water works, are farm homes or agricultural labor camps. In appearance, as shown by photographs in evidence, as well as in use, it is distinguishable from the lands east of the Decoto rights of way.

The trial court found the area east of the Decoto rights of way to be residential and inhabited. These findings are not disputed. The area between the Decoto and Newark rights of way was found to be predominantly agricultural and industrial in use. The land west of the Newark right of way was found to be marsh and overflow land, predominantly used as a duck-hunting area. These findings are sustained by the evidence. Additionally, it was found that the entire area west of the Decoto rights of way, considered as a unit, differed materially in use and nature from that to the east.

One element of the factors of separability and distinguishability, as indicated by the decisions cited above, appears to be a dividing line clear enough to constitute a basis for distinguishing with reasonable clarity and certainty between the inhabited and uninhabited areas of the annexation territory. Such lines exist here in the railroad rights of way. Appellant quotes Government Code, section 35105: "Contiguous inhabited territory may be annexed as one parcel although divided by a road, stream, or other natural or artificial barrier or right of way." Concededly, the railroad rights

of way do not, of themselves, bar inclusion of lands on both sides in a single annexation. ▮ However, these raised rights of way, constituting visible barriers between sections of the proposed annexation, can be considered with all the other evidence upon the issues of separability and distinguishability. They were so considered in *Johnson* v. *City of San Pablo, supra,* 132 Cal.App.2d 447, and in *Capuchino Land Co.* v. *Board of Trustees, supra,* 34 Cal.App. 239. Further, the code section refers only to contiguous inhabited territory. ▮ Here, the finding is that the area on one side of the right of way was uninhabited. These rights of way divide the annexation area into three sections, and the principal line, that of the Decoto rights of way, can be regarded as dividing the whole area into two portions.

There can be little question that the areas found to be separable and distinguishable are also substantial portions of the whole. The entire annexation area consists of 2,383 acres. The area between the Decoto and Newark rights of way contains 1,721 acres, or 72.2 per cent of the whole, while 266 acres, 11.2 per cent of the whole, lie west of the Newark tracks. Combined, the areas west of the Decoto tracks constitute 83.4 per cent of the total proposed annexation.

Appellants also attack the finding and conclusion that the land between the Decoto and Newark rights of way was uninhabited. ▮▮ Under the 1939 Act, territory is deemed uninhabited if "less than twelve registered voters reside within it" (Gov. Code, § 35303). The trial court found Mr. and Mrs. Loorz not to be inhabitants within this definition. On and for some time before the date here critical, they had occupied a home on his father's land within the annexation area. They were registered voters in the city of Alameda. Registration, as well as residence, must be within the annexation area to meet the code requirements (*People* v. *City of Richmond,* 141 Cal.App.2d 107 [296 P.2d 351]). Thus, Mr. and Mrs. Loorz are not to be counted in determining whether the area is inhabited. There was evidence that they stayed rather frequently at the Alameda address, kept many of their possessions there, and used that address for vehicle registration, drivers' licenses, and Mr. Loorz' draft registration. Whether they resided in the area was a question of fact (*People* v. *City of Richmond, supra; People* v. *City of Long Beach,* 155 Cal. 604 [102 P. 664]). The trial court's finding upon conflicting evidence must be sustained. It is unnecessary for us to consider the questions raised as to the residence of Mr.

Riley, whose property was divided by the boundary line of the proposed annexation. Even if he were held to reside in the area, there still would be fewer than 12 residents in this separable portion of the annexation area.

Appellants argue that Government Code, section 35303, *supra,* which defines uninhabited territory as that having less than 12 registered voters, has no application to this proceeding because it specifically applies ''For purposes of this article.'' This section appears in article 5 (the Annexation of Uninhabited Territory Act of 1939). Thus, say appellants, it can have no application to proceedings under the 1913 Act, which is found in article 2. They say that originally the Uninhabited Territory Act could not apply if there were even one resident in the annexation area. Thus, the argument runs, the purpose of section 35303 was to broaden the application of the Uninhabited Territory Act, without in any way restricting application of the 1913 Act. Appellants also rely upon section 35101, which is a part of article 2 (the 1913 Act). This provides that ''When any proceedings for annexation . . . are commenced pursuant to this article, the provisions of Article 1 of this chapter and of this article alone apply.'' This, they say, emphasizes that section 35303, in article 5, cannot restrict the operation of the 1913 Act.

We cannot accept this contention. For many years, the mutual exclusiveness of the two acts has been recognized. The Act of 1913 stems from that of 1889 (Stats. 1889, p. 358). The present provisions of the 1939 Act are adapted in large part from the Act of 1899 (Stats. 1899, p. 37). The Act of 1889, like the present statute, did not in terms require that an area be inhabited to be subject to annexation under its provisions. Nevertheless, it was held as early as 1917 that substantial uninhabited areas could not be annexed under the 1889 Act (*Capuchino Land Co.* v. *Board of Trustees, supra,* 34 Cal.App. 239). It is apparent that a given territory cannot be both inhabited and uninhabited at the same time. ▮ Thus, statutory provision for a distinct procedure for annexation of uninhabited territory excludes inhabited territory from operation of the same statute. It is this clear exclusion which has given rise to the rule that substantial uninhabited areas which are severable and distinguishable from the inhabited portions of an annexation area cannot be included in an attempted annexation of inhabited territory. ▮ The limitation of section 35303 to the ''purposes of this article'' makes it no less a limitation upon the 1913 Act.

 The suggestion that section 35101 leaves the 1913 act applicable to territory which is "uninhabited" within the definition of the 1939 Act is equally unsound. Under that section, articles 1 and 2 are specifically applicable. Included in article 1 is section 35006, which, as adopted in 1953 and in effect at the critical date here, provided that "When uninhabited territory . . . is annexed, proceedings may be had under Article 3 or Article 5 of this chapter." Thus, the very section upon which appellants rely does not exclude, but specifically refers to, section 35303, as a part of article 5.

In another respect, section 35006 tends to refute appellants' contention. It is significant that the Legislature deemed it necessary to provide specifically for the overlapping operation of article 3 (annexation of territory owned by a city or contiguous school district) and the 1939 Act, yet wholly failed to provide for such operation of the 1913 and 1939 Acts. We find it difficult to conclude that the Legislature intended to make both acts applicable to territory having from 1 to 11 inhabitants, as appellants argue. In the light of the legislative abstention from including such provision when adding section 35006 in 1953, it would be judicial legislation for us now to insert such language in the guise of construction.

The two acts differ substantially in their application. The 1913 Act provides for effective protest by owners of a majority of parcels within the area, and for determination whether to annex by vote of the qualified electors in the area. Under the 1939 Act, protest by owners of half the value of the territory terminates the proceedings. Obviously, the two acts differ substantially, and are not intended to apply to the same territory at the same time. In the case at bar, protestants owned more than half the value and area of the uninhabited territories, but fewer than half of the parcels in the entire annexation area.

Appellants concede that the decision in *Johnson* v. *City of San Pablo, supra,* 132 Cal.App.2d 447, is implicitly contrary to their argument. They suggest that the point is not specifically discussed in that opinion, and thus is but "assumption" upon that issue. In the light of the above discussion, and the decisions in *People* v. *City of Monterey Park, supra,* 40 Cal.App. 715, and *Capuchino Land Co.* v. *Board of Trustees, supra,* 34 Cal.App. 239, we consider the conclusion in the Johnson case to be sound and controlling.

Judgment affirmed.

Kaufman, P. J., and Dooling, J., concurred.