[L. A. No. 25345. In Bank. June 24, 1959.]

CITY OF PORT HUENEME, Appellant, v. CITY OF OXNARD et al., Respondents.

CITY OF OXNARD, Respondent, v. CITY OF PORT HUENEME, Appellant.

N/A

Jerome H. Berenson, City Attorney, Burke, Williams & Sorenson and Royal M. Sorenson for Appellant.

Joseph W. Goss, City Attorney, for Respondents.

Robert T. Anderson, Assistant City Attorney (Berkeley), Walter N. Anderson, City Attorney (Manhattan Beach), Paul B. Baker, City Attorney (Alturas), Homer H. Bell, City Attorney (Monrovia), John R. Berryhill, City Attorney (Tulare), Thomas W. Bewley, City Attorney (Whittier), Louis A. Boli III, City Attorney (Folsom), Lloyd A. Bullock, City Attorney (Compton), LeRoy A. Broun, City Attorney (Fre-

mont), Robert Buck, City Attorney (Seal Beach), Robert A. Boon, City Attorney (Roseville), Jerome J. Bunker, City Attorney (Palm Springs), John G. Buresh, City Attorney (San Anselmo), Waldo E. Burford, City Attorney (Porterville), Joseph B. Burgess, City Attorney (Dos Palos), John M. Burnett, City Attorney (Manteca), Henry M. Busch, City Attorney (Upland), Hartley H. Bush, City Attorney (Oakdale), Donald P. Cady, City Attorney (Susanville), Stanley B. Christensen, City Attorney (Fullerton), Richard M. Clare, City Attorney (Santa Maria), John W. Collier, City Attorney (Oakland), J. P. Correia, City Attorney (Yreka), Lloyd M. Creasey, City Attorney (Crescent City), Sherrod Stone Davis, City Attorney (Woodside), Pierce Deasy, City Attorney (Ione and Jackson), F. Joseph Doerr, City Attorney (El Cajon), G. A. Drescher, City Attorney (Wasco), John B. Ehlen, Attorney for the Town of Corte Madera and City of Sausalito, Daniel M. Fadenrecht, City Attorney (Corcoran), Robin D. Faisant, Attorney for the Town of Los Altos Hills, Wm. A. Flory, City Attorney (San Bernardino), Reginald E. Foster, City Attorney (Pacific Grove), John A. Galvin, City Attorney, (Fillmore), John T. Ganahl, City Attorney (Corona), R. E. Ghidella, City Attorney (Napa), H. E. Gleason, City Attorney (Turlock), Edward A. Goggin, Deputy City Attorney (Oakland), B. D. Goodman, City Attorney (Fairfield), Haskell Goodman, City Attorney (Milpitas), J. E. Greene, City Attorney (Dinuba), Allen Grimes, City Attorney (Modesto), R. S. Harrington, City Attorney (Brawley), Arthur J. Harzfeld, City Attorney (San Mateo), Francis Hoey, City Attorney (Martinez), Fred C. Hutchinson, City Attorney (Berkeley), Bernard M. King, Assistant City Attorney (Fremont), William Kinley, City Attorney (Rolling Hills), Lynn W. Kloepfer, City Attorney (Ontario), F. A. Knight, City Attorney (Signal Hill), Manuel L. Kugler, City Attorney (Chula Vista), Anthony A. Lagorio, City Attorney (Los Altos), Monroe N. Langdon, City Attorney (Stockton), Morgan W. Lowery, City Attorney (La Verne), L. N. Lorenzen, City Attorney (Mount Shasta), Kee Maxwell, City Attorney (Paramount), Richard B. Maxwell, City Attorney (Santa Rosa), Mike Mayo, City Attorney (Montebello), Thomas F. McBride, City Attorney (Concord), Alexander J. McMahon, City Attorney (Sonoma), Edmund M. Moor, City Attorney (Red Bluff), Bobley E. Morgan, City Attorney (Santa Clara), Alfred G. Mortimore, City Attorney (Shafter), Robert H. Mullen, City

Attorney (Lodi), George G. Murry, City Attorney (Gustine, Los Banos and Newman), Thomas C. Nelson, City Attorney (Mill Valley), John R. Nimocks, City Attorney (Palo Alto), John Noonan, City Attorney (South San Francisco), Lowell Palmer, City Attorney (Calistoga), Frank L. Perry, City Attorney (Redondo Beach), Grayson Price, City Attorney (Chico), J. A. Ratchford, City Attorney (Cloverdale and Healdsburg), David Rice, City Attorney (Hawthorne), D. R. Robinson, City Attorney (Auburn), Carl E. Rodegerdts, City Attorney (Woodland), Donald D. Roff, City Attorney (Santa Paula), Frank W. Rose, Assistant City Attorney (San Mateo), Chester E. Ross, City Attorney (Hollister and San Juan Bautista), Ralph W. Rutledge, City Attorney (Colusa), John W. Scanlon, City Attorney (Hayward), Charles B. Snow, City Attorney (Newark), L. De Witt Spark, City Attorney (Roseville), C. A. Stromsness, City Attorney (Corning), Wm. A. Struthers, Jr., City Attorney (Pleasanton), M. Tellefson, City Attorney (Culver City), Wm. M. Thornton, City Attorney (Exeter), George Wadsworth, City Attorney (Tracy), Saul M. Weingarten, City Attorney (Gonzales and Seaside), C. F. Woolpert, City Attorney (Indio), Cecil C. Wright, City Attorney (Orange), and Russell Zaches, City Attorney (Monterey), as Amici Curiae on behalf of Respondents.

SCHAUER, J.—These two mandamus proceedings, consolidated for trial, findings, and judgment, come before this court on appeal by the city of Port Hueneme (hereinafter called Hueneme) from a superior court judgment upholding two annexations of territory by the city of Oxnard (hereinafter called Oxnard), and declaring void an annexation undertaken by Hueneme of territory which overlaps in part that sought to be annexed by Oxnard. The periods of time (from about March 4, 1955, to May 4, 1955) during which the two cities were respectively pursuing the three annexation proceedings also partially overlapped. (See Gov. Code, § 35308.) We have concluded that each of the three attempted annexations was defective and that the judgment should be affirmed with respect to the Hueneme proceeding but reversed insofar as it decrees Oxnard's purported annexations to be valid.

Trial was had upon a stipulated statement of facts, admissions in the pleadings, and exhibits attached to the pleadings, which include maps showing the boundaries of both Oxnard

and Hueneme and boundaries of the subject annexations.[1] All three annexations were commenced under the Annexation of Uninhabited Territory Act of 1939. (Gov. Code, §§ 35300-35326; see also §§ 35000-35003.) Unless otherwise stated section numbers hereinafter cited will refer to Government Code sections as they read at the times here involved.

### Hueneme Annexation

From the stipulated facts it appears that when the annexation undertaken by Hueneme, known as the Brucker-Lown Annexation, was first proposed there were 18 adult residents within the described boundaries, but only five were registered voters. "After the filing of said boundaries with" the county boundary commission (see § 35002) but before the commission had approved them, nine more of the residents registered to vote, thus raising the number of registered voters within the territory proposed to be annexed to 14. Immediately thereafter "officials of Port Hueneme withdrew the first proposed boundaries of the Brucker-Lown Annexation from consideration by the Boundary Commission and substituted therefor" boundaries revised so as to exclude[2] three houses inhabited by eight of the 14 registered voters. These excluded houses were located on land which was in each case part of a larger parcel belonging to the same owner, the remainder of which larger parcel was included within the so-called "second proposed" Brucker-Lown Annexation. Thereafter the revised boundaries were approved by the boundary commission, a petition for the "revised Brucker-Lown Annexation" was received by the city council of Hueneme, and after a public hearing the council adopted an ordinance purporting to annex the territory. (§§ 35305-35307, 35311-35314.)

Section 35303 provides that "territory shall be deemed uninhabited if less than twelve registered voters reside within it at the time of the filing [with the city legislative body] of the petition for annexation or the institution of proceedings on motion of the city legislative body." The trial court found

---

[1]Both cities were municipal corporations of the sixth class at the times involved.

[2]That the objective of Port Hueneme was to exclude the registered voters rather than to make any substantial change in the territory proposed to be annexed is strikingly indicated by examination of Appendix I (Oxnard map, portion of Exhibit 1, Case 44546) and Appendix II (Port Hueneme map, portion of Exhibit A, Case 44530), attached to the reply brief of the city attorney of Oxnard.

that the territory "so attempted to be annexed by Port Hueneme was not uninhabited territory but was inhabited territory," and concluded that the annexation proceedings were therefore void, and that valid annexation proceedings could only have been undertaken under the inhabited territory Annexation Act of 1913 rather than the uninhabited Act of 1939. This determination was correct.

 Whether the territory included within the proposed annexation was inhabited is a question of fact which does not depend upon whether the houses of the registered voters in which they ate and slept were within the boundaries of the proposed annexation but upon whether such houses were an integral part of the whole parcel (including the portion thereof which fell within the boundaries of the proposed annexation) so as to render the whole parcel inhabited. (*People* v. *City of Richmond* (1956), 141 Cal.App.2d 107, 111-114 [296 P.2d 351].) Contrary to the contention of Hueneme, the stipulated facts hereinabove set forth fully support the court's finding that the territory included within the proposed Brucker-Lown Annexation was inhabited and plainly evidence an attempt by Hueneme to exclude from such annexation the habitations of eight registered voters and thus to sever such habitations from the parcels of which they were an integral part. There is nothing in either *United States Pipe & Foundry Co.* v. *City Council* (1957), 150 Cal.App.2d 630 [310 P.2d 431], or in *Johnson* v. *City of San Pablo* (1955), 132 Cal.App. 2d 447 [283 P.2d 57], relied upon by Hueneme, to compel a contrary finding. It follows that, as adjudged by the trial court, Hueneme's attempted annexation under the uninhabited Act of 1939 was void and of no effect. (See *American Distil. Co.* v. *City Council of Sausalito* (1950), 34 Cal.2d 660, 664-665 [1] [213 P.2d 704, 18 A.L.R.2d 1247].)

Hueneme, citing section 956a of the Code of Civil Procedure, has filed an application with this court to produce additional evidence, "oral in character," and for this court "in accordance with said additional evidence, to make Findings of Fact in addition to, or contrary to, those made by the trial court." (See rule 23 (b), Rules on Appeal.) The application and supporting affidavits accompanying it indicate that by such evidence Hueneme seeks to create a conflict with facts recited in the stipulation of facts on which the trial court in part based its finding that the territory attempted to be annexed by

392

Hueneme was inhabited, rather than uninhabited,[3] and to have this court resolve the conflict in favor of Hueneme and then make findings contrary to those of the trial court in order to reverse the judgment. Such is not a function of this court. ▉ As declared in *Gantner* v. *Gantner* (1952), 39 Cal.2d 272, 281 [13] [246 P.2d 923], citing *Tupman* v. *Haberkern* (1929), 208 Cal. 256, 266 [280 P. 970]. "The purpose of section 956a is to permit an appellate court to remedy defects in the record 'to the end that the judgment or order appealed from may be affirmed and further litigation terminated, and where otherwise under the old practice the judgment or order would have to be reversed.'" The Tupman case points out that section 956a "was not intended to convert the appellate tribunals of the state into triers of fact." (Pp. 269-270 of 208 Cal.) ▉ The issue as to the inhabited character of the territory included within the boundaries of the proposed Brucker-Lown Annexations is conceded by Hueneme to have "been present at all times," it was clearly and specifically presented to and determined by the trial court, and the application of Hueneme to produce further evidence in this court will be denied.

### Oxnard Annexations

The two Oxnard Annexations here involved are known as 55-3 and 55-5. At the times the city council received the petitions requesting these two annexations (§ 35305), the territory which they encompassed was not contiguous to the boundaries of Oxnard as those boundaries then existed but was contiguous to territory encompassed in Oxnard Annexation 55-2, which latter territory was contiguous to the existing Oxnard boundaries. Annexation 55-2 was not yet complete nor had that territory become a part of the city; the ordinance approving the annexation had been adopted by the city council (§ 35314) but had not become effective nor had a copy thereof been transmitted to or filed by the Secretary of State.

[3]More particularly, it appears that Hueneme seeks to attempt at this late hour to show that persons residing in one of the houses excluded from the so-called "second proposed" Brucker-Lown Annexation were tenants in, rather than owners of, such house and that the balance of the larger parcel from which such house was excluded was used by the owner for agricultural purposes, with which the tenants had no connection; and further that another of the excluded houses was under separate ownership rather than being (as declared in the stipulated facts) part of a larger parcel. Hueneme does not mention the number of registered voters it claims resided in the two houses.

(§§ 35316-35318.[4]) However, completion of Annexation 55-2 did take place prior to adoption of ordinances approving 55-3 and 55-5, with the result that 55-3 and 55-5 thereupon became contiguous to existing Oxnard boundaries.

Section 35302 declares that "The boundaries of a city may be altered and *contiguous* uninhabited territory annexed . . . pursuant to this article [i.e., the uninhabited Act, §§ 35300-35326]." (Italics added.) The trial court held that contiguity to 55-2 was "sufficient and adequate contiguity to permit valid commencement" of annexation proceedings 55-3 and 55-5, that the so-called "absolute" contiguity which existed at the time of adoption of the approval ordinances was sufficient to permit Oxnard to proceed with completion of the two proceedings, and that such proceedings were valid.

In support of this holding Oxnard contends that section 35302 does not require contiguity to city boundaries at the time the petition to annex uninhabited territory is received by the legislative body but only requires contiguity at the time the annexation proceedings are completed and the territory becomes part of the city as provided in section 35318,[4] and that inasmuch as contiguity existed before completion of proceedings 55-3 and 55-5 such proceedings met the statutory requirements and were valid. This contention is without merit.

■ As declared in *American Distil. Co.* v. *City Council of Sausalito* (1950), *supra*, 34 Cal.2d 660, 664 [1], in annexation proceedings the statute constitutes "the measure of the power to be exercised." Moreover, section 35301 specifies that when, as in the present case, "proceedings for the annexation of territory to a city are commenced pursuant to this article [§§ 35300-35326, uninhabited Act], the provisions of this article and of Article 1 [general provisions, §§ 35000-35003] of this chapter alone apply." ■ There is nothing in any of such provisions which suggests that the contiguity made requisite by section 35302 need not come into existence until after the annexation proceedings have been initiated (by either the presentation to the city legislative body of a

[4]Section 35316: "When an ordinance approving annexation becomes effective, the clerk of the legislative body shall immediately prepare . . . a certified copy of the ordinance . . . and transmit it to the Secretary of State."

Section 35317: "Upon receipt of the certified copy of the ordinance, the Secretary of State shall file it . . ."

Section 35318: "From the date of filing by the Secretary of State, annexation is complete, and the territory becomes part of the city."

petition signed by owners whose land is involved (§ 35305), or (§ 35310) on that body's own motion). Rather, section 35302, which authorizes annexation of "contiguous uninhabited territory," is immediately followed by the provisions of section 35303 that territory shall be deemed uninhabited according to the number of registered voters residing within it *"at the time of the filing of the petition* for annexation *or the institution of proceedings on motion* of the city legislative body." (Italics added.) It appears reasonable to conclude that the Legislature intended that contiguity likewise be determined at that time.

Oxnard argues further that omission of the words "so proposed" from section 35302 when the uninhabited Act of 1939 was codified as a part of the Government Code in 1949, supports its position that contiguity need not exist at the inception of annexation proceedings. Prior to the 1949 codification section 2 of the act provided that "Any such territory *so proposed* to be annexed to a municipal corporation must be contiguous thereto." (Stats. 1939, p. 1567; italics added.) Inasmuch as section 35002 of the Government Code requires that before an annexation petition may be received or proceedings initiated by the legislative body the "proposal" for annexation of territory to a city must be submitted to the county boundary commission for a report upon various matters affecting the "proposed boundaries," it appears that such significance as may be attributed to omission of the words "so proposed" extends no further than to now permit presentation of a "proposal" to the boundary commission to annex territory not yet contiguous to the city but does not operate to validate annexation proceedings if contiguity does not yet exist when the matter reaches the city's legislative body. Moreover, the change in the wording of the statute was proposed by the code commission which, in its report submitting the redraft of the 1939 act as well as the redraft of the "Annexation Act of 1913" (inhabited territory) and other statutes for codification in the Government Code, expressly stated that it was not the commission's intention by its proposed codification to make any substantive changes in the statutes codified. (Report of the California Code Commission, Legislative Session of 1949.)

Oxnard also points to the fact that the Inhabited Act of 1913 (Gov. Code, §§ 35100-35158) provides, in section 35104, that "To qualify for annexation, new territory shall

be contiguous to: (a) The city, or (b) Contiguous territory where the electors have voted for annexation to the city," and in reliance upon *People* v. *Town of Corte Madera* (1952), 115 Cal.App.2d 32, 43-44 [8] [251 P.2d 988], argues that because the Legislature has expressly provided that territory need not be contiguous at the inception of annexation proceedings under the inhabited Act of 1913, the courts should read a similar provision into the uninhabited Act of 1939. In that case it was declared that where the courts are called upon to construe words in either annexation act the words should be interpreted in such manner that the two acts will be harmonious, unless a logical explanation exists which justifies a differentiation, and that no such explanation existed for a rule based on an express provision of the inhabited act (§ 35105) that physical contiguity was not broken by the existence of a highway or right of way and for a contrary rule under the uninhabited Act of 1939 because of absence of such an express provision therein. This holding rested in part, however, upon the further comment that to conclude that a difference was intended between the two acts when they were codified in 1949 would "require us to imply that by nonaction [i.e., omission of the provision from the uninhabited act] the Legislature intended to change existing law," an implication which the court refused to make. But to uphold Oxnard's position on this point would also require an implication that a change in the law was intended when the 1939 act was codified—an implication which, as pointed out hereinabove, is not supportable.

Rather, we are persuaded that this is a proper case for application of the doctrine that "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." (*People* v. *Town of Corte Madera* (1950), 97 Cal. App.2d 726, 729 [1] [218 P.2d 810].) In addition to the single fact of omission from the Act of 1939 of a provision that annexed territory need not be contiguous at the inception of the proceedings, it may be further observed that the provision in the 1913 act (§ 35104) is specific in stating that if territory is not contiguous to the city it must be contiguous to "Contiguous territory where the electors have voted for annexation to the city." That act further provides, in section 35141, that "a favorable vote on the annexation of territories

not contiguous to the city is not effective unless there is also a favorable vote on the territories that would make the non-contigous territories contiguous to the city.'' ▪ It is thus apparent that omission from the 1939 act of a provision similar to that found in section 35104 was not unintentional on the part of the Legislature, and that for the courts to validate proceedings under the 1939 act where contiguity is not achieved until some time subsequent to commencement of the annexation would require reading into the statute various uncertain and undefined exceptions plainly not within legislative intent. Merely to outline the several ingenious arguments ably presented by Oxnard and by amici curiae as to why the proceedings should be permitted to progress to various suggested stages before contiguity should be required would serve only to indicate that they are of a nature more properly addressed to the Legislature than to the courts. (*Cf. Johnson* v. *City of San Pablo* (1955), *supra*, 132 Cal. App.2d 447, 457 [7].) The same may be said of arguments pro and con as to allegedly undesirable delays to property owners or to other cities desiring to annex which assertedly could or would ensue if contiguity is required at the outset of annexation proceedings on the one hand, or if it is not so required on the other. If the Legislature wishes or intends to permit annexation under the circumstances here attempted by Oxnard in proceedings 55-3 and 55-5 it can and presumably will so declare by express statutory provision.

Oxnard urges that *In re Lancaster City Ordinance No. 20-1952* (1953), 374 Pa. 543 [98 A.2d 33], provides authority supporting its position. In that case the court employs the expression ''intercontiguity'' to describe a situation in which, as here, land not contiguous to the city is nevertheless contiguous to a tract which is contiguous to the city and which tract is in the process of being annexed. The brief opinion holding that such ''intercontiguity'' permitted the owners of the noncontiguous land to legally petition for annexation does not discuss pertinent state law or the history thereof, and is not persuasive in view of the California statutes on the subject.

At oral argument contentions were advanced by Oxnard that because the territory desired by Hueneme which overlaps that sought by Oxnard falls within a parcel which is connected only at a corner with the other parcels included within the attempted Hueneme annexation, such ''cornering'' rendered that parcel noncontiguous, and that by reason of

such asserted noncontiguity Hueneme is not an interested party which may attack the overlapping annexation proceedings of Oxnard. Because of our conclusions on the other points raised, we do not reach these contentions.

The application by Hueneme to produce additional evidence is denied. The judgment is affirmed insofar as it decrees that the Hueneme Brucker-Lown Annexation is void, but that portion of it which decrees that Oxnard Annexations 55-3 and 55-5 are valid and effective is reversed, each party to bear its own costs on appeal.

Gibson, C. J., Shenk, J., Traynor, J., Spence, J., McComb, J., and Peters, J., concurred.