[Civ. No. 25165.   Second Dist., Div. One.   May 31, 1961.]

THE PEOPLE ex rel. THE CITY OF TORRANCE et al., Respondent, v. THE CITY OF GARDENA, Appellant.

Walter N. Anderson, City Attorney, for Appellant.

Stanley Mosk, Attorney General, Bonnie Lee Martin, Deputy Attorney General, Stanley E. Remelmeyer and Robert K. Dower for Respondent.

FOURT, J.—This appeal is from the judgment entered July 27, 1960, "in favor of plaintiffs and against defendant, and from the whole of said judgment." The judgment provides in pertinent part as follows:

". . . [T]he action brought by the Attorney General in the name of the People of this State, upon relation of the City of Torrance, in Quo Warranto against the City of Gardena to test the validity of a completed annexation proceeding shall be approved and that said City of Gardena shall be excluded from any and all franchises, and that jurisdiction or control over lands within said uninhabited territory designated as the 'Crenshaw Boulevard Annexation', and that said annexation proceeding by the City of Gardena is null and void." (Emphasis added.)

On June 29, 1960, the trial judge filed a "MEMORANDUM OF DECISION" which sets forth the facts of the case at bar as follows:

"The facts in this case are not in dispute . . .

"On March 23, 1959, the City of Gardena, pursuant to California Government Code, Section 35310 (unless otherwise specified, all code sections hereinafter referred to are references to the Government Code) passed Resolution of Intention No. 1548 to annex certain territory known as the 'Crenshaw Boulevard Annexation.' These proceedings were commenced under the annexation of Uninhabited Territory Act of 1939 (Sections 35300, et seq.) The resolution instructed the City Clerk of Gardena to forward a copy of the map and legal description of the area proposed for annexation to the Secretary of the Boundary Commission of Los Angeles County. This was done on March 23, 1959. On April 1, 1959, the Boundary Commission notified the City Clerk that the boundaries of the proposed annexation were approved with some slight revisions in the legal description, and informed the

City Clerk of Gardena that the proposed annexation was entirely within the boundaries of the proposed 'Alondra Addition' to the City of Torrance which had been previously approved by the Commission on March 18, 1959. On April 21, 1959, Resolution No. 1558 was adopted by the City Council of the City of Gardena, amending Resolution No. 1548, and employing the Boundary Commission's revised description. A hearing on protests was duly scheduled and held. Ordinance No. 497 approving the 'Crenshaw Boulevard Annexation' was adopted by the City Council of Gardena on July 9, 1959; a certified copy was sent to the Secretary of State and an affidavit of completion of the annexation was filed with the County Recorder of Los Angeles.

"The City of Torrance also initiated an annexation of certain territory referred to as the 'Alondra Addition' in accordance with the Annexation Act of 1913, governing the annexation of inhabited territory (Sections 35100, et seq.) The territory to be annexed by Gardena's 'Crenshaw Boulevard Annexation' was part of Torrance's 'Alondra Addition.' On March 3, 1959, the Planning Commission of the City of Torrance recommended that the 'Alondra Addition' be annexed, and on March 4, 1959, the City Council of the City of Torrance consented to the commencement of the annexation proceedings as required by Section 35106. A written description of the territory proposed for annexation was filed with the Secretary of the Boundary Commission of Los Angeles County on March 5, 1959. (Section 35002.) On March 18, 1959, the Boundary Commission made its report revising and approving the written description. A notice of intention to circulate a petition was published by the proponents of the petition on March 22, 1959, as required by Section 35111. On March 24, 1959, one day following the adoption of the Gardena resolution of intention, the City Council of the City of Torrance adopted Resolution No. 3654 . . ."

On October 9, 1959, after first obtaining leave to sue, "THE PEOPLE OF THE STATE OF CALIFORNIA UPON THE RELATIONS OF: THE CITY OF TORRANCE, a municipal corporation of the State of California" filed a "COMPLAINT IN QUO WARRANTO TO AVOID AN ANNEXATION" naming "THE CITY OF GARDENA . . ." as defendant.

Therein it was alleged that "the attempted annexation of the City of Gardena is void because substantive and jurisdictional provisions of the annexation laws were violated."

On May 20, 1960, the defendant filed its "DEMURRER OF DEFENDANT CITY OF GARDENA TO COMPLAINT IN QUO WARRANTO."

The matter was heard on May 31, 1960. *The Reporter's Transcript of the proceedings indicates that but a single issue was raised in the trial court.* The transcript states in pertinent part as follows:

"THE COURT: . . . I think this: that but for the injection of this matter having to do with the City of Lawndale and possibly a stipulation as to certain dates, I think that the matter could be determined on a Demurrer because as I see it without preventing Mr. Anderson from arguing the sufficiency of the pleading itself, but assuming that as I think it does—not in the very finest way—but I think it does state a cause of action and *it raises the sole question as to whether or not under the circumstances the City of Gardena or the City of Torrance first acquired jurisdiction.*

"If you can state that as a matter of law that one or the other did, then it would be determined the Demurrer, wouldn't it?

"MR. DOWER: Yes.

"THE COURT: It would be determined on the Demurrer. In other words, if the Court held that the City of Gardena acquired jurisdiction first to be more specific that their failure to comply with Section 35002, is it?

"MR. DOWER: Yes.

"THE COURT: ——regarding getting the approval of the Boundary Commission that would determine the matter because admittedly by your own state of facts they did proceed a day before. Query: *Did the failure to get the approval of the Boundary Commission first deny them any jurisdictional rights in view of the attempted procedure on its own proceedings and getting the Commission's approval?*

"MR. DOWER: That's the issue.

"THE COURT: And as I say they have injected another issue in here which, as I say, we can't consider unless you can stipulate.

"MR. ANDERSON: *Yes. If counsel wants to stipulate to the facts that I have set them out correctly as to the dates, I will be agreeable.*" (Emphasis added.)

Several pages later the transcript discloses:

"THE COURT: And I think the Demurrer would be deter-

mined that at this time if we want it limited to that sole issue.

"Mr. Anderson: *I would be willing to limit it to the sole issue.*

"The Court: *Then it's a pure question of law as to whether or not the failure of the City of Gardena to get prior consent or approval rather of the Boundary Commission as between two cities is fatal or whether it is as has been held in cases where it involved property owners held only to be a procedural or directive matter or ordinary procedure. Is that not the case as you see it?"*

It is further stated in the transcript:

"The Court: Very well. Well, do I understand, gentlemen, that we have an understanding that in so far as the demurrer is concerned, it is the understanding that the Demurrer is being submitted with the understanding that if—let me think how this would go.

"Mr. Anderson: If the Demurrer is overruled——

"The Court: Yes, then that will determine the proceeding.

"Mr. Anderson: Without the filing of an Answer.

"The Court: Without the filing of an Answer because the Court will then have made an explicit finding in effect that the facts are true and under the facts as stated as a matter of law the City of Torrance had a priority.

"If on the other hand the Demurrer is sustained then it will be tantamount to the Court holding that the complaint doesn't state a cause of action because on its face the City of Gardena had jurisdiction.

"I think that that is a clear cut question which can be reviewed, if necessary.

"Mr. Anderson: Very well. . . . This is apparently a matter of first impressions, as I understand it, excepting in so far as the fact that there are these two cases, the Jefferson case, the Sunnyvale case which have held that at least in argument between property owners as to the propriety of annexation proceedings.

"The Court: The requirement of it is 35002?

"Mr. Anderson: Yes.

"The Court: Or directory only and do not complete jurisdiction. Query: *Should a different rule apply where the contest is between two cities who seek to annex certain territory, one of which follows the procedural system and the other does not, each getting jurisdiction but one having followed*

*the procedure getting jurisdiction at least a day after the former?*

"<span>. . . . . . . . . . .</span>

"THE COURT: Yes. *It's this question: Is there a justifiable basis for distinction in the controversy between two cities in so far as the necessity of complying with Section 35002 is concerned as against acquisition where merely property owners in a particular area are contesting the validity of an annexation proceeding.*" (Emphasis added.)

In overruling defendant's (appellant's) demurrer, the trial court determined that the provisions of section 35002 were, in a controversy between two cities, mandatory.

Appellant has attempted to present two issues on appeal. The first issue is stated as follows: "(1) That independent of the Gardena annexation proceedings, Torrance lacked jurisdiction to go forward with the Torrance annexation because of the pendency of the proposed incorporation of the City of Lawndale."

As shown by the reproduced portions of the reporter's transcript, the Lawndale matter was not presented to the trial court for determination. On the contrary, appellant stipulated that there was but one issue. ▮▮▮ As stated in *Munfrey* v. *Cleary,* 75 Cal.App.2d 779, 785 [171 P.2d 750]:

"Also as a general rule where a case has been tried upon one theory that theory must be adhered to on appeal, and a party who has tried his case wholly or in part on a certain theory, which theory was acted upon by the trial court, cannot, on appeal, change his position and adopt a different theory, since to do so would be unfair to the trial court and to opposing counsel. (*Blanc* v. *Connor, supra* [167 Cal. 719 (141 P. 217)]; *Marra* v. *Aetna Construction Co.,* 15 Cal.2d 375, 379 [101 P.2d 490]; *Mathews* v. *Pacific Mutual Life Ins. Co.,* 47 Cal.App.2d 424, 428 [118 P.2d 10]; *Ernst* v. *Searle,* 218 Cal. 233, 240-241 [22 P.2d 715]; 2 Cal.Jur. 237; 4 C.J.S., 471; 5 C.J.S. 175.)"

▮ What was stated in *Rabbitt* v. *Carthage Marble Corp.,* 12 Cal.App.2d 572 [55 P.2d 1205], is pertinent in disposing of appellant's attempt to interject a new issue on appeal. As stated therein at page 575:

"Defendant has attempted to inject a plethora of issues on this appeal which have no materiality to the fundamental point involved, and to which counsel by stipulation narrowed

the actual trial of the case. The alleged facts upon which defendant now attempts to raise new issues were not raised in the trial court, are not included in the written stipulation filed, and are directly contrary to the oral declarations of defendant made to the trial court, as to what the issues were. . . . Under such circumstances, new issues of the character now urged . . . cannot be considered for the first time on appeal. [Citations.]''

The issue presented for determination, and the law applicable to the acquisition of jurisdiction in annexation proceedings were set forth in the trial court's memorandum as follows:

''The question for decision is whether the City of Gardena acquired exclusive jurisdiction over the disputed territory on March 23rd when it adopted the resolution of intention to annex, *without having first obtained a boundary commission report as required by Section 35002.*[1] [Emphasis added.]

''As between rival annexation proceedings, the legislative body first obtaining jurisdiction retains it exclusively until final determination of the particular proceeding. (*City of Burlingame* v. *County of San Mateo,* 90 Cal.App.2d 705 [203 P.2d 807]; *Hubbell* v. *City of Los Angeles,* 142 Cal.App.2d 1 [297 P.2d 724]; *Borghi* v. *Board of Supervisors,* 133 Cal. App.2d 463 [284 P.2d 537]; *Johnson* v. *City of San Pablo,* 132 Cal.App.2d 447 [283 P.2d 57].)

''The time at which jurisdiction is acquired in annexation proceedings has been determined . . . [to be as follows]. In a proceeding to annex *inhabited* territory the adoption of the resolution approving the circulation of a petition confers the exclusive jurisdiction for a period of 50 days within which to complete annexation of the territory. (*City of Costa Mesa* v. *City of Newport Beach, supra* [165 Cal.App.2d 553 (332 P.2d 392)]; *Borghi* v. *Board of Supervisors, supra*; Section 35113.) The City of Torrance adopted Resolution No. 3654 on March

---

[1]Government Code, section 35002, provides in pertinent part as follows: ''No petition seeking the annexation of territory to a city shall be circulated or filed, . . . *nor shall any legislative body initiate proceedings to annex on its own motion, until a written description of the proposal for the annexation of territory to a city has been filed with the secretary of the boundary commission of the county and the boundary commission has prepared, or caused to be prepared, a report to the proponents upon the annexation proposal with respect to the definiteness and certainty of the proposed boundaries, the nonconformance of proposed boundaries with lines of assessment or ownership, the creation of islands or corridors of unincorporated territory and other similar matters affecting the proposed boundaries.*'' (Emphasis added.)

24, 1959, to annex the 'Alondra Addition' which is, as indicated, inhabited territory.

"Proceedings to annex *uninhabited* territory are instituted and jurisdiction attaches 'when a valid and sufficient petition for annexation has been filed with the legislative body of a city *or* that body has instituted such proceedings on its own motion.' (Government Code Section 35308.) (*City of Costa Mesa* v. *City of Newport Beach, supra.*) The proceedings are instituted on a city's own motion when a resolution of intention to annex is adopted pursuant to Section 35310. Gardena's Resolution No. 1548 was adopted on March 23, 1959, to annex the 'Crenshaw Boulevard Annexation' which is uninhabited territory.

"The City of Torrance concedes that if Resolution 1548 to annex the 'Crenshaw Boulevard' territory was validly enacted by the City of Gardena, Gardena would have priority over the City of Torrance and would retain jurisdiction until final determination of their proceeding. (Section 35308.)"

In support of appellant's contention that section 35002 is merely a directory provision intended to encourage definiteness and certainty in boundary descriptions, and is not mandatory, two cases are cited. The first is *Jefferson Union School District* v. *City Council of Sunnyvale,* 129 Cal.App.2d 264 [277 P.2d 104]. In that case the attack upon the annexation was being made by a school district. The basis for the attack was that the petition for annexation was circulated and signed before it was submitted to and reported upon by the county boundary commission, even though such submission and report occurred prior to the adoption of the resolution by the city council.

The court held that "the provisions of section 35002 are directory, not mandatory." The court stated at page 266:

"When, as in the instant case, a city council has received an appropriate petition bearing the signatures of a sufficient number of landowners and a report of the county boundary commission that the proposed boundaries described in the petition are definite and certain, it would seem an idle and useless act to return the petition to the proponents for resignature by the petitioners and resubmission to the council."

Unlike the Jefferson case, the case at bar involves two jurisdictions competing for priority in annexation proceedings. There seems little doubt that even if all the steps in the Jef-

ferson case had been taken in proper order, the same result would have been obtained.

The second case cited by appellant is *Southern Lumber Co. v. City Council of San Jose,* 146 Cal.App.2d 133 [303 P.2d 599]. The Southern case, like the Jefferson case, did not involve two jurisdictions competing for priority. In *Southern,* the annexing city did file a proposed description with the boundary commission prior to the commencement of annexation proceedings. The city of San Jose complied with the Annexation of Uninhabited Territory Act of 1939 by filing the proposal with the county commission before passing its resolution of intention to annex plaintiff's land. Subsequently, the board of supervisors adopted a resolution to incorporate into the city of South San Jose the area proposed to be annexed by San Jose, but the election was called off. The city of San Jose then adopted a second resolution of intention to annex the identical territory as described in its first resolution to annex. The court held that the resubmission of the proposal to the boundary commission would have been an idle act and as such was unnecessary.

Appellant also cites two cases which did involve competing cities. (*City of Costa Mesa* v. *City of Newport Beach,* 165 Cal.App.2d 553 [332 P.2d 392]; *City of Cupertino* v. *City of San Jose,* 186 Cal.App.2d 29 [8 Cal.Rptr. 525].) Neither of these cases is helpful to appellant in resolving the issue before this court.

In the Costa Mesa case at page 557, the court rejected the contention that it was the submission of the matter to the boundary commission which constituted the institution of annexation proceedings.

With reference to the conditions precedent to the institution of annexation proceedings as distinguished from the issue of "what" constitutes institution of proceedings, the court stated at page 557:

"*No annexation proceeding may be instituted until the proposal therefor has been submitted to and reported upon by the county boundary commission.*" (Emphasis added.)

We believe that the trial court was correct when it determined that the requirements of section 35002 are mandatory where the contest for annexation is between two cities. We hereby adopt, as set forth in pertinent part hereafter, the trial court's memorandum:

"... It is to be noted that in neither case (i.e. Jefferson

and Southern) was the court concerned with whether obtaining a boundary commission's report before enacting the resolution is mandatory when, as here, two cities are racing to obtain jurisdiction. Factually the cases differ with the case at bar in that the court in the cited cases was concerned with property owners in the annexed territory, and in both cases the court found that the purpose of the statute had been fulfilled, the election was fair, the result would have been the same if Section 35002 had been complied with and no one was injured or prejudiced. Here we have the problem of a dispute between two cities in rival annexation proceedings competing for the same territory. In inhabited territory, in the absence of a majority protest of property owners the electors of the annexed territory are entitled to vote on the issue of annexation. Thus it cannot be said the result would have been the same if Gardena had complied with Section 35002 because its non-compliance in effect denied the property owners in the territory to be annexed the privilege of expressing their preference on whether to annex to Torrance or not, and later to have the electors residing in the territory to vote thereon at an election called for that purpose. In this sense their rights were prejudiced because Gardena's resolution only gave to such property owners the option of approving or disapproving annexation to Gardena. The City of Torrance was also in fact prejudiced by following the preliminary procedures prescribed by Sections 35000, et seq. It waited, as it was required to do under the Government Code, until it had received a report from the boundary commission before enacting its resolution approving the circularization of the petition seeking the annexation. . . . Under these circumstances may it be said the Legislature [sic] purpose, as reflected by Section 35002 was accomplished when, it may be presumed, Gardena, with notice of Torrance's intention to annex the territory in question, proceeded to adopt its notice of intention one day before Gardena would have acquired jurisdiction by the expediency of omitting the requirement of first obtaining a boundary commission report? It may be as pointed out in the Jefferson and Southern Lumber cases, in a situation involving property owner disputants, a resubmission of the report to the Boundary Commission previously approved would be an idle act, or the adoption of a resolution under Section 35310, before the Boundary Commission approved the boundaries, but subsequently approved by the Commission would be a mere technical non-

compliance, particularly where the facts disclose that the election was fair, the result would have been the same regardless, and no prejudice or injury results. Here, where two cities are competing to obtain jurisdiction over the same territory the consequences of noncompliance may be much different because it involves the principle of orderly government and the rights of property owners and electors in the territory to be annexed. To approve the procedure taken by Gardena would result for all practical purposes in the elimination of Section 35002 as a prior procedural step. Legislative history involving annexations in California discloses heroic and detailed attempts by the Legislature to insure orderly government by enacting measures designed to curb the unseemly conduct of governmental agencies in their rivalry to expand by annexation or incorporation. Thus various provisions of the Government Code provide that once jurisdiction attaches in an annexation or incorporation proceeding no other petition for annexation or incorporation shall be filed, nor shall any legislative body consent to the circulation of a petition or initiate any proceedings on its own motion until such proceeding is terminated or defeated. (Sections 35113; 35115; 35308.)

"Section 35002 uses the verb 'shall' and should be construed as mandatory under Section 14 of the Government Code unless modified by Section 5 of the same Code which provides that definitions found among the 'general provisions' including Section 14, shall govern unless 'the provision or the context otherwise requires.' The court in *Jefferson [Union School Dist.]* v. *City Council [of Sunnyvale], supra,* held that under the facts of that case 'the context does otherwise require, *to the extent at least that there has been a technical noncompliance in this case.'* (Emphasis added.) It is elementary that the language used in any opinion is to be understood in the light of the facts and the issues then before the court. *(Porter* v. *Bakersfield [& Kern Elec. Ry. Co.],* 36 Cal.2d [582] 590 [225 P.2d 223].) As previously indicated, the factual situation in the case at bar is far different from the factual situation in the Jefferson and Southern Lumber cases. It is this court's opinion that omitting to follow the requirements of Section 35002 where the contest for annexation is between two cities is not a mere technical noncompliance but is substantive and one that involves orderly procedure to insure good government. In these circumstances the context of Section

35002 does *not* otherwise require any other interpretation of the word 'shall' other than that it is mandatory.''

For the reasons stated, the judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 26, 1961.