[L. A. No. 26445. In Bank. Nov. 16, 1961.]

ATHALIE IRVINE BURT, Plaintiff and Appellant, v. JAMES G. SCARBOROUGH et al., Defendants and Respondents.

Loeb & Loeb, Howard I. Friedman and Herman F. Selvin for Plaintiff and Appellant.

McCutchen, Doyle, Brown & Enersen, McCutchen, Black, Harnagel & Shea, Morris M. Doyle, George Harnagel, Jr., and Jack T. Swafford for Defendants and Respondents.

DOOLING, J.—Athalie Irvine Burt, a director of the Irvine Company, brought this action in the Superior Court of Los Angeles County for a writ of mandate against the company and its six other directors to compel them to allow her "accompanied by counsel of her choice" to attend meetings of the company's board of directors. Four of the directors—Scarborough, McFadden, Honer and Wheeler—moved for a change of venue to Orange County, upon the ground that none of them resided in Los Angeles County but each was a resident of Orange County, and "the hearing, determination and trial of this action" should therefore be in that county. (The other two directors—Gerdes and McLaren—reside in the City and County of San Francisco and were not involved in the motion.) The motion was granted and this is an appeal from the order accordingly entered.

Appellant concedes that three of the respondent directors—McFadden, Honer and Wheeler—are residents of Orange County but she argues that respondent Scarborough, for

venue purposes, is a resident of Los Angeles County and the transfer of venue was therefore improper. She does not question the sufficiency of the facts to sustain the court's implied finding that Scarborough resided in Orange County but she insists that "an Orange County residence is not incompatible with [his] concurrent Los Angeles County residence," for one may have multiple residences for venue purposes.

There is no dispute in the material facts. Scarborough maintains law offices in the City of Los Angeles. His principal client is the Irvine Company, whose offices are near Tustin in Orange County. He spends about fifty per cent of his working time on the company's business but most of his service is performed at his Los Angeles office. He and his wife divide their time, according to his working schedule, between an apartment which they lease in Los Angeles and the home that they own in Balboa, Orange County. He endeavors to follow this routine: From Tuesday morning through Thursday afternoon he works in his Los Angeles office, and accordingly he and his wife stay Tuesday and Wednesday nights in their city apartment; Thursday in the late afternoon they drive to Balboa where they stay for the weekend and Monday night, consistent with his practice to spend Monday in the Irvine Company's Tustin office. They keep clothing and other personal requisites in both the Los Angeles apartment and their Balboa home. Their bank accounts are kept in Los Angeles. Scarborough maintains certain club memberships in Los Angeles, and the directory listing gives both the Balboa and Los Angeles addresses. Both Scarborough and his wife are registered as voters in Orange County. Scarborough testified that he considered the Balboa home to be his permanent residence.

Section 395 of the Code of Civil Procedure provides with respect to transitory actions that "the county in which the defendants, or some of them, reside at the commencement of the action" is the proper county for the trial thereof. The question to be determined is whether, under the venue statute, "residence" should be equated with "domicile" as respondents contend pursuant to a single-residence premise, or should be deemed merely to mean a factual place of abode of some permanency, as appellant contends coincident with her concept of multiple residences.

The provision for trial in the county of a defendant's residence, in substantially the form in which it now appears in section 395 of the Code of Civil Procedure, has been a part

of our statutory law since 1851. (§ 20 of the Practice Act, Stats. 1851, p. 53.) During the first period of more than 50 years, so far as our own research or that of able counsel discloses, the possibility of a dual or multiple residence for venue purposes was not suggested to our courts. The suggestion was first presented, so far as the reported cases show, in 1909 in *Younger* v. *Spreckels,* 12 Cal.App. 175 [106 P. 895]. Upon the showing that defendant had a summer home in Santa Cruz County in which he lived for portions of the year, the superior court of that county denied a motion for change of venue to San Francisco although the defendant by affidavit gave evidence that conclusively established San Francisco as his domicile. ▮▮▮ The appellate court reversed, saying at pages 177-178: "Within the contemplation and meaning of the statute a person can have but one *bona fide* residence. Residence depends upon intention as well as fact; and in its ordinary acceptation it is the place where one remains when not called elsewhere on business, pleasure or for other temporary purpose. The mere inhabitancy of a summer home or country house at certain seasons of the year or at certain times would not make the party inhabiting said house a resident of the county in which such house is situated. The material question is the *animo manendi.* Although one may abide at times in a place for pleasure or health or repose it does not become his domicile unless it be his intention to remain there. The place of residence within the meaning of the statute is the fixed home of a party as understood by himself and his neighbors and friends."

This construction of the "residence" provision of section 395 as referring to a single residence, corresponding to domicile, has since been consistently followed by our courts with the two exceptions hereinafter noted and discussed. (*Stone* v. *Everts,* 203 Cal. 197 [263 P. 236]; *Marston* v. *Watson,* 20 Cal.App. 465 [129 P. 611]; *Smilie* v. *Smilie,* 24 Cal. App. 420 [141 P. 829]; *Simpson* v. *Hosin,* 49 Cal.App. 585 [103 P. 867]; *Sherman* v. *Reynolds,* 83 Cal.App. 403 [256 P. 847]; *Catsiftes* v. *Catsiftes,* 29 Cal.App.2d 207 [84 P.2d 258]; *cf. O'Brien* v. *O'Brien,* 16 Cal.App. 103 [116 P. 692]; *Johnston* v. *Benton,* 73 Cal.App. 565 [239 P. 60].) In *Stone* v. *Everts, supra,* 203 Cal. 197, this court very clearly adopted the single-residence concept for venue purposes when it said at page 198: "From the allegation 'that all of the remaining above named defendants were at the time of the commencement of this action and ever since have been and

now are residents of the county of Fresno, State of California,' it must necessarily follow that said defendants are not residents of the city and county of San Francisco.'' It is laboring the obvious to point out that if a defendant could have more than one residence under section 395, it would not necessarily or at all follow that because he was a resident of Fresno County he was not a resident of San Francisco.

Appellant relies principally upon the discussion of the different senses in which the word ''residence'' may be used found in *Smith* v. *Smith,* 45 Cal.2d 235 [288 P.2d 497], and upon *Bohn* v. *Better Biscuits, Inc.,* 26 Cal.App.2d 61 [78 P.2d 1177], and *Enter* v. *Crutcher,* 159 Cal.App.2d Supp. 841 [323 P.2d 586], in an attempt to persuade us that we should now adopt the dual- or multiple-residence concept as the proper one to apply in construing section 395. The *Smith* case only reiterates the long-recognized rule that ''residence'' is not necessarily a synonym for ''domicile'' and that its meaning in a particular statute is subject to varying constructions. This was well recognized when the codes were adopted in 1872 (see Commissioners' Note to Pol. Code, § 52, in the original annotated edition) and was early given recognition by this court in *Hanson* v. *Graham,* 82 Cal. 631 [23 P. 56, 7 L.R.A. 127]. We may not assume that this court or the several District Courts of Appeal which adopted the single-residence concept in construing section 395 were in ignorance of the well-recognized distinction between ''residence'' and ''domicile.'' We should not gratuitously assume that they were ignorant of a legal distinction well known to their predecessors of the bench and bar. Rather we must assume that with the choice of meanings that might be given to the word ''residence'' open to them, they concluded that the legislative purpose of section 395 would best be served by the single-residence or domiciliary concept of that word. Against this consistent and long continued construction of section 395, appellant can only cite *Bohn* v. *Better Biscuits, Inc., supra,* 26 Cal.App.2d 61, and *Enter* v. *Crutcher, supra,* 159 Cal.App.2d Supp. 841. The *Bohn* case dealt with the question of place of trial for a defendant foreign corporation, and its discussion of the meaning of ''residence'' in section 395 was said by this court to be ''unnecessary to the decision and overly broad'' and characterized as dictum in *Hale* v. *Bohannon,* 38 Cal.2d 458, 474 [241 P.2d 4]. The *Enter* case is a decision of the appellate department of the superior court. It followed the dictum of *Bohn* that ''residence'' in

section 395 is not to be construed as ''domicile.'' It is inconsistent with itself, for the court said (159 Cal.App.2d Supp. at p. 844): ''[a] person has only one residence at a time,'' citing *Stone* v. *Everts, supra*, 203 Cal. 197. ■ A person may only have one domicile at a time, but he may have more than one residence if residence is not construed to mean ''domicile.'' This case cannot, of course, have the effect of overruling earlier decisions of this court and of the district courts of appeal.

Appellant asks us to overrule a construction of section 395 which has been consistently followed by this court and the District Courts of Appeal for over 50 years. ■ Since the first decision of the question in 1909 in *Younger* v. *Spreckels, supra*, 12 Cal.App. 175, and the other decisions cited herein, the Legislature has frequently amended section 395 in other particulars but has left the ''residence'' provision untouched. (See e.g., Stats. 1911, ch. 421, p. 847; Stats. 1933, ch. 744, p. 1840; Stats. 1939, ch. 981, p. 2733; Stats. 1951, ch. 869, p. 2384; Stats. 1955, ch. 832, p. 1447.) This, at the very least, may be taken as some indication that the Legislature is satisfied with the construction put on the ''residence'' provision by the courts. (*People* v. *Hallner*, 43 Cal.2d 715, 719 [277 P.2d 393]; *Rosemary Properties, Inc.* v. *McColgan*, 29 Cal.2d 677, 687 [177 P.2d 757].)

■ Where a rule of procedure has become well settled by court decisions, courts are reluctant to change it without a compelling reason. (*Cheesman* v. *Hanby*, 188 Cal. 709, 713 [206 P. 993]; *People* v. *Harrison*, 107 Cal. 541, 544 [40 P. 956]; *Sauer* v. *Superior Court*, 74 Cal.App. 580, 583 [241 P. 570].) No compelling reason for changing the rule here in question appears.

We may add that the construction put on the ''residence'' provision of section 395 by our courts comports with the majority rule in other jurisdictions (see cases collected in 12 A.L.R.2d 758-760) and a similar provision of the New York Code was construed in accordance with the single-residence concept (*Kleinrock* v. *Nantex Mfg. Co.*, 201 App. Div. 236 [194 N.Y.S. 142]) until amended in 1925 to provide: ''A party having or maintaining a residence in more than one county shall be deemed a resident of either county'' (see *Gelband* v. *Gelband*, 65 N.Y.S.2d 710).

The order is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.