[Civ. No. 7039.   Fourth Dist.   Oct. 15, 1962.]

J.  V.  EVANS, Plaintiff and Respondent, v. CITY OF ORANGE et al., Defendants and Appellants.

Cecil C. Wright, Dungan & Tobias and George H. Tobias for Defendants and Appellants.

Jacobs, Jacobs, Nelson & Witmer and Paul B. Witmer, Jr., for Plaintiff and Respondent.

BROWN, J.*—This is an appeal from the judgment rendered in favor of respondent holding that the city did not have jurisdiction to proceed with the annexation of certain lands.

### The Facts

In January 1961 the representatives of the corporate owners of property lying southeast of the City of Orange contacted certain officials of the city, namely, the city manager, director of public works and the city attorney, relative to annexation of this property to the City of Orange under the Annexation of Uninhabited Territory Act of 1939, Government Code section 35300. The officials furnished the owners with a form prepared by the city together with a petition for annexation. The petition was signed but not dated on or about February 3, 1961, and on February 6th it was taken into the City of Orange and left with the director of public works. The

---

*Assigned by Chairman of Judicial Council.

director gave this petition number 159 and placed a penciled notation of "2/6/61" on it. The proposal was then submitted to the Orange County Boundary Commission with a letter signed by the city attorney. On February 14th the boundary commission made its report and approved the proposal. The director of public works placed the date of February 14th opposite each signature on the petition and gave it to the city clerk with instructions for presentation to the city council that evening. The city clerk stamped said petition with that date and the city council on the evening of February 14th adopted a resolution giving notice of said annexation and setting the date of the protest hearing pursuant to Government Code sections 35305, 35306 and 35307. The resolution contains a recital that the petition was filed after the proposal was submitted to and reported by the boundary commission.

On or about February 6, 1961, there were eleven registered voters in the area, Mr. and Mrs. Burton Rowley, Lois Rowley, William B. Rowley, June Fletcher, Theola Kesling, Eva E. Tobias, Don M. Fletcher, Jack V. Evans, Cynthia Evans and Thelma Evans. Of the above persons, Mr. and Mrs. Rowley were in another part of the United States acting as missionaries at the time, and Cynthia Evans was in Berkeley where she had been attending the University of California. On the day that the city council acted on the matter two additional persons became registered, to wit, Genevieve Chuml and Karl Kesling.

Thereafter, the respondent sought a peremptory writ of mandate to require the City of Orange and the city council to terminate all its proceedings in connection with No. 159 because such proceedings and resolution were illegal for the reason that at the time the petition was filed there were twelve or more registerd voters residing in the area and that the area was not contiguous to the City of Orange. The city answered, claiming that the petitioner had waived his rights because he had failed to file a written protest; that he did not come into court with clean hands. Thereafter, the case was tried by the court without a jury and in its findings of fact and conclusions of law the court determined that annexation proceedings were commenced pursuant to the Annexation of Uninhabited Territory Act of 1939; that the territory to be annexed was not uninhabited within the requirements of section 35303 of the Government Code; that it was contiguous to the City of Orange; and rejected the defenses.

The City of Orange thereafter moved for a new trial and

further moved to set aside the judgment and notice of appeal from the judgment was filed.

### When Was the Petition for Annexation Filed?

The procedure for annexation of uninhabited territory under Government Code section 35300 provides in section 35301 that article I of this chapter applies, which commences with section 35000.

Section 35002 of the Government Code reads as follows: ''No petition seeking the annexation of territory to a city shall be circulated or filed, nor shall any public officer accept any such petition for filing, nor shall any legislative body initiate proceedings to annex on its own motion, until the proposal for the annexation of territory to a city has been submitted to and reported upon to the proponents by the boundary commission of the county with respect to the definiteness and certainty of the proposed boundaries.''

▮ It is appellants' position that this proposal or petition was actually on file as of February 6th when it was left with Mr. Harper, the Director of Public Works, though Mr. Harper testified that he made the penciled notation and that it did not purport to be an official filing stamp. Appellants claim that Mr. Harper, while not authorized by the ordinances of the City of Orange, or by any written command or authorization, had in fact been handling these various matters under instructions from the city council for some period of time. Appellants also claim that section 35002 does not name the person to whom petitions for annexation are to be filed and that therefore Mr. Harper was the official designated and authorized to accept such petitions.

In *Childress* v. *Peterson*, 18 Cal.2d 636, 641-642 [117 P.2d 336], in a mandamus proceeding, the court held that the testimony of the acting chief of police as to oral statements regarding official action was inadmissible to vary the written records and explain the reduction shown on the ordinance and that the official record of the action of the council could not be altered by oral statements of individual councilmen. Therefore, the testimony of Weimer, the City Manager of the City of Orange, and Harper, the Director of Public Works, was incompetent to prove the filing on February 6th or any other time prior to February 14, 1961.

Appellants also state that this petition was filed on February 6th because the number was attached to it on that date; that evidence shows that the signers signed it on February 3d

though they did not date the petition; that the petition was actually sent to the boundary commission on February 6th; that even though Mr. Harper wrote the date of February 14th opposite each signature and the clerk had stamped on the petition the date he received it, February 14th, and the petition was actually presented to the city council on that date, nevertheless, the actual date the petition was filed was February 6th and that if it were to be held that such petitions could be filed only with the city council, then there would be delay because the city councils customarily do not meet every day and citizens would have to wait until the city council would have its next meeting.

There is no doubt that on February 6th there were less than twelve registered voters in the territory proposed to be annexed.

The determination by a city that a given area is uninhabited for annexation purposes under the Annexation of Uninhabited Territory Act of 1939 involves a jurisdictional question on which depends the very power of the city to act. Jurisdictional questions are subject to judicial inquiry. (*People* v. *City of Richmond,* 141 Cal.App.2d 107, 117 [296 P.2d 351].)

Of the many cases we have read, all matters of annexation have been discussions of petitions filed directly with the legislative body. In *City of Port Hueneme* v. *City of Oxnard,* 52 Cal. 2d 385, 390 [341 P.2d 318], the court paraphrased section 35303 as follows:

"Section 35303 provides that 'territory shall be deemed uninhabited if less than twelve registered voters reside within it at the time of the filing [with the city legislative body] of the petition for annexation or the institution of proceedings on motion of the city legislative body.' "

In the case before us, the court found that on February 6th and 14th, 1961, there were eight persons who were registered voters physically residing and domiciled in the area; that on February 6th and 14th, Mr. and Mrs. Burton Rowley and Cynthia Evans were registered voters within the area to be annexed but were physically absent, and that on February 14th two persons, Genevieve Chuml and Karl W. Kesling, executed affidavits of registration and were physically residing within the territory to be annexed, and the court further found that on February 14th there were more than twelve registered voters within the territory and that there were more

than twelve registered voters *residing* in the territory. There was substantial evidence to support the court's finding of fact.

We think it is immaterial to determine whether or not the city clerk received the petition on the afternoon of February 14th, inasmuch as the city council did actually get the papers on February 14th and acted on them.

In *McDowell & Craig* v. *City of Santa Fe Springs*, 54 Cal. 2d 33, 36 [4 Cal.Rptr. 176, 351 P.2d 344], the court said:

"Although proceedings preliminary to presentation of the signed petition to the legislative body differ somewhat under the two annexation acts, we are satisfied that the point of time at which contiguity is to be determined was intended by the Legislature to be the same for both inhabited and uninhabited territory; viz., the receipt by the legislative body of the signed petition, or any authorized initiation of annexation proceedings by that body upon its own motion."

It was the lower court's memorandum opinion that indicated that the proceeding prior to February 14th was in a proposal form and there was no receipt by the legislative body of the signed petition at least until the city clerk took the petition before the city council.

In *People* ex rel. *City of Torrance* v. *City of Gardena*, 192 Cal.App.2d 686 [13 Cal.Rptr. 742], the court held that Government Code section 35002 which states that a petition for annexing territory cannot be filed with the city council until the matter has been approved by the boundary commission, is mandatory in contests between two cities. In other words, the petition cannot be filed with the city until the boundary commission has acted. In the same case, however, it is implied by dictà that as far as individuals in the city are concerned this is not mandatory, and implies that a petition can be prematurely filed with the council.

In *Jefferson Union Sch. Dist.* v. *City Council*, 129 Cal.App. 2d 264 [277 P.2d 104], it is stated that the provisions of section 35002 of the Government Code are directory and not mandatory, at least to the extent of the noncompliance involved in that case. The court, in effect, said that the context of the verb "shall" in section 35002 requires a construction other than the definition found in the "general provisions" of section 14 of the Government Code, to the extent at least that there has been a technical noncompliance, and this does not violate section 14 of the Government Code which states that "shall" is mandatory and "may" is permissive.

In *People* v. *City of San Bruno*, 124 Cal.App.2d 790, 794

[269 P.2d 211], it was said: "The court should not so technically construe such statutes as to compel absolute and literal compliance with every word contained therein, because to do so, in many cases, would result in defeating the will of the majority in situations where no one was or could be misled."

The court did say, however, that: "The fundamental purpose of the regulatory provisions of the statute is to assure a fair election to the property owners in the area to be annexed, and to assure them that they will not be imposed upon or misled."

In a somewhat comparable situation are the sections covering organization of new cities. Government Code section 34303.5 states that no petition may be circulated or filed with the board of supervisors until the matter has been submitted to and a report received from the boundary commission. Section 34308 states that if the report of the boundary commission shows that the petition is signed by the requisite number of qualified signers and accurately describes the boundaries, the board shall direct its clerk to accept the petition for filing and file it as soon as the sufficient amount of money for costs has been paid. This is discussed in *Borghi* v. *Board of Supervisors*, 133 Cal.App.2d 463, 469-470 [284 P.2d 537]:

"In annexation proceedings, as we have shown, it is not the preliminary proceedings which the Legislature has determined shall give control, but the point when the governing body has approved the circulation of the petition for annexation. In incorporation proceedings it is the point where the petitioners for incorporation have completed their work, namely, the payment of the costs fixed by the board—and the board is obligated to call the election."

We can apply the same rules for the city as are applied with reference to petitions to the board of supervisors, which are more explicit in Government Code section 34308.

*Was the Territory Proposed to be Annexed Inhabited or Uninhabited on February 14?*

Section 35303 of the Government Code defines "uninhabited territory" as a territory where ". . . less than twelve registered voters reside within it at the time of the filing of the petition for annexation or the institution of proceedings on motion of the city legislative body."

The court found that there were more than twelve registered voters who resided on the premises. That finding may not be disturbed on appeal unless the evidence of facts is free from substantial conflict, and reasonable minds can draw

but one inference from the facts, which inference clearly shows that less than twelve registered voters, within the meaning of the statute, resided on the territory here involved on February 14, 1961. In making a determination we are mindful of long established rules of appellate evidentiary review, so well expressed in *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183], where the court said:

"In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court."

In *Central Mfg. Dist., Inc.* v. *Board of Supervisors*, 176 Cal.App.2d 850, 857 [1 Cal.Rptr. 733], the court said: "Necessarily, respondent is bound by findings of fact based upon substantially conflicting evidence"; and at page 859, further said: "The court found that the averments of said paragraph 9 (*re* number of registered voters in area) were untrue, thus removing that area from the possibility of annexation as uninhabited territory."

Genevieve Chuml, one of the persons whom appellants claim was a nonresident of the territory proposed to be annexed, testified that she had formerly lived on the premises with her parents in 1947; that she had moved back with her parents to the premises in the early part of February 1961; that she intended to remain there; that she had possessions there; that she wanted to move back to be closer to her children. We feel that there is no doubt that Mrs. Chuml was residing on the premises on February 14th, and the court so correctly found.

As to Mr. and Mrs. Burton Rowley, the testimony showed that they had voted at every election from this address from 1936 to 1960; that they owned real estate in the territory to be annexed; that Mr. Rowley was a retired school teacher; that the Rowleys had purchased a house trailer and for the last two or three years had been "trailering" while acting as missionaries; that between trailer trips they returned to the 10-acre ranch, living at the small house at the upper end of the

property in which they keep fishing equipment, clothes and furniture, tools, cookware, dishes, etc. and that they come back from their trailer trips from time to time and stay at their small house on the property.

There is conflicting testimony by George H. Tobias, a witness for appellants, as to certain telephone conversations which he had with Mrs. Rowley in Teton National Park on June 14, 1961 when she told him that she had been in Arizona in February 1961 at a church mission; that she had been back in Orange County in the latter part of February 1961 or the first part of March 1961; that on February 14th she was in Arizona; that she and her husband had been in Oregon at a bible conference; that the Rowleys regarded their place of living at the Newport Boulevard address (the home which is now rented to the son and daughter-in-law) within the annexed territory; that they would return to Orange County in October or November of 1961 and would stay in their trailer on their return which they would park by the small house on their 10-acre property; and that as far as their future was concerned, it was indefinite.

Cynthia Evans is the daughter of respondent and has lived on the property of her father within the territory to be annexed for 17 years, going to the University of California in 1960 and living in a small cottage in Berkeley with two other girls. Since she did not graduate in February 1961 as expected, she remained at her college address to study so that she could retake her examination. In her testimony she said she planned to return to the property in Orange County upon her graduation. It was brought out that there was a telephone listed in her name but she testified she did not sign for the installation or pay the bill and that one of the other girls in the cottage with her did this without her knowledge and that at all times she had maintained her voter's residence at the Orange County location.

The terms "reside," "residence" and "domicile" are terms of various import and have various meanings depending upon the purposes for which the statute is used. In some instances, "domicile" and "residence" are synonymous and sometimes they have other shades of meaning. In attachment proceedings such as in *Egener* v. *Juch,* 101 Cal. 105 [35 P. 432], the court defined "residence" as meaning actual, as distinguished from a constructive or legal, residence.

In *Bohn* v. *Better Biscuits, Inc.,* 26 Cal.App.2d 61, 64 [78 P.2d 1177], the term "reside" as used in section 395 of the

Code of Civil Procedure dealing with venue, was defined as not meaning domicile, and that in common sense, the word "reside" means to abide continuously, to sojourn, etc. However, this case was criticized as being inconsistent with itself, as discussed in *Burt* v. *Scarborough*, 56 Cal.2d 817, 820, 822 [17 Cal.Rptr. 146, 366 P.2d 498], where the court said:

"The appellate court reversed [in *Younger* v. *Spreckels*, 12 Cal.App.175 (106 P. 895)], saying at pages 177-178: 'Within the contemplation and meaning of the statute a person can have but one *bona fide* residence. Residence depends upon intention as well as fact; and in its ordinary acceptation it is the place where one remains when not called elsewhere on business, pleasure or for other temporary purpose. The mere inhabitancy of a summer home or country house at certain seasons of the year or at certain times would not make the party inhabiting said house a resident of the county in which such house is situated. The material question is the *animo manendi*. Although one may abide at times in a place for pleasure or health or repose it does not become his domicile unless it be his intention to remain there. The place of residence within the meaning of the statute is the fixed home of a party as understood by himself and his neighbors and friends.'

"This construction of the 'residence' provision of section 395 as referring to a single residence, corresponding to domicile, has since been consistently followed by our courts with the two exceptions hereinafter noted and discussed. . . .

"Since the first decision of the question in 1909 in *Younger* v. *Spreckels, supra,* 12 Cal.App. 175, and the other decisions cited herein, the Legislature has frequently amended section 395 in other particulars but has left the 'residence' provision untouched. (See e.g., Stats. 1911, ch. 421, p. 847; Stats. 1933, ch. 744, p. 1840; Stats. 1939, ch. 981, p. 2733; Stats. 1951, ch. 869, p. 2384; Stats. 1955, ch. 832, p. 1447.) This, at the very least, may be taken as some indication that the Legislature is satisfied with the construction put on the 'residence' provision by the courts."

In *Burt* v. *Scarborough, supra,* the defendant had a law office in Los Angeles and lived in Orange County, spending about 50 per cent of his time in each place. He had a telephone, personal effects, bank accounts and maintained club memberships in Los Angeles, but was a registered voter and spent the weekends in Orange County. There, the court held that for the purpose of venue statutes, he resided in Orange County.

Elections Code section 14282 defines the "residence" of a person as ". . . that place in which his habitation is fixed and to which, whenever he is absent, he has the intention of returning."

Section 14283 of the Elections Code states that, "A person does not gain or lose residence solely by reason of his presence at or absence from a place . . . nor while a student of any institution of learning, . . ." And section 14284 states that, "A person who leaves his home to go into another state or precinct in this State for temporary purposes merely, with the intention of returning, does not lose his residence."

Historically, the original purpose of the uninhabited annexation statute, adopted in 1899, appears to have been to allow uninhabited areas to be annexed by cities without the necessity of an election.

*Shepherd* v. *Board of Supervisors,* 137 Cal.App. 421, 428 [30 P.2d 578], defined the word "uninhabited" as follows:

"Clearly the term 'uninhabited,' as it is used in the annexation statute which is here involved, means that the property is not presently occupied by persons who actually live or abide thereon."

With the growth of cities in California and the continued desire to enlarge the cities by annexation without the necessity of an election, and in instances where there are two people living on the property who are interested in its being annexed to a city, the Legislature in 1945 amended the Annexation of Uninhabited Territory Act of 1939 to say that any territory where there were less than three qualified electors residing shall be deemed uninhabited territory. In 1947 the act was again amended by increasing the number from less than three to less than twelve and changing the phrase "qualified electors" to "registered voters." Here we have a much stricter method for handling annexation, though it can be said that this liberalized the law, which it did to the extent of making it easier for cities to annex an area without the necessity of an election, thereby saving expense, and to count people within the area proposed to be annexed.

Again in 1961 the Legislature amended the Act to require that the registered voters must now be registered to vote for at least 54 days prior to the filing of the petition, whereas before, people who lived in areas were protected from being annexed against their will by the fact that they were living in an inhabited area with less than twelve registered voters

(becoming an uninhabited area), which is purely a fiction in the law.

Is it possible for a registered voter of *X* County to reside within *Y* County which has the uninhabited annexation proceeding pending? This is answered in *U. S. Pipe & Foundry Co.* v. *City Council*, 150 CalApp.2d 630 [310 P.2d 431]. There, the court said, "Registration, as well as residence, must be within the annexation area to meet the code requirements," and, "Whether they reside in the area was a question of fact . . . ."

In section 395 of the Code of Civil Procedure, regarding venue, it is provided:

". . . the county in which the defendants, or some of them, reside at the commencement of the action, is the proper county for the trial of the action."

It appears that appellants' theory would be that an uninhabited area could have one hundred or more registered voters but if less than twelve actually physically resided on the area to be annexed, then section 35303 of the Government Code would apply. We think that the Legislature intended by this section to mean if there are less than twelve registered voters from the area to be annexed, then the property is uninhabited.

### *Amendment to Government Code Section 35303*

In 1961 the Legislature amended the statute to read:

"For purposes of this article territory shall be deemed uninhabited if less than 12 ~~registered~~ ~~voters~~ *persons who have been registered to vote within the territory for at least 54 days* reside within ~~it~~ *the territory* at the time of the filing of the petition for annexation or the institution of proceedings on motion of the city legislative body."

(The amendment covered the deleted words and portions shown by italicizing.)

The amendment to the bill came as a result of a report of the Interim Committee on Municipal and County Government. On April 18, 1961, Assemblyman Bradley introduced the bill, AB 2696, which had many other amendments and changes; it was signed by the Governor on July 19, 1961, and went into effect in September 1961. In chapter VIII of the Final Report of the Assembly Interim Committee on Municipal and County Government, volume 6, number 16, referring to the recodification of annexation and related incorporation statutes, it is stated:

"It is felt by most experts in this field that the bulk of

these defects can be corrected by a careful recodification designed to attain clarity with a minimum of substantive legislative change.''

In chapter IX, the conclusion to the report—

''As stated earlier, this report was not meant to outline definite Committee recommendations but only to indicate the findings and recommendations of the four main groups in this field.

''. . . the Committee has come to certain conclusions which are not meant to be definite legislative recommendations as such but only to be recommended as guides to be used by those drafting substantive legislative changes in the annexation and incorporation statutes. . . .

''Changes in the law must recognize the rights of individuals, as well as the rights of cities and counties in their total relationship to each other.''

This report only shows the summary of the hearings, the view of the county supervisors, the Attorney General and the City League of Municipalities and there is no definite recommendation for a change to Government Code section 35303 which would show that such was intended, if introduced, to be merely clarifying and not a substantive change. Appellants claim that the digest to the bill shows legislative intent but any reference to AB 2696 by means of the Legislative Counsel's digest (Joint Assembly and Senate Rules) is purely for information purposes to the members of the Legislature and in no way can indicate what the intent of the Legislature is.

No doubt the portion relating to this amended section received some support from the case of *Perham* v. *City of Los Altos,* 190 Cal.App.2d 808 [12 Cal.Rptr. 382], which was decided in April 1961 and has to do with the annexation of uninhabited territory. There, the court said that the filing of the petition for annexation was not for an election and the applicable statutes provide for no election. In other words, the court stated there that while one must have a year's residence in the state and 90 days in the county and 54 days in the precinct prior to the day of the election, this does not prevent him from registering as a voter and the 54-day requirement is purely for the purpose of facilitating the orderly arrangement of the precincts for use at an election. Thus, a person who registers is deemed to be a registered voter whether or not he can vote immediately.

It is appellants' contention that this change in the law comes as a result of the legislative study, the Attorney Gen-

eral's opinion (29 Ops. Cal.Atty.Gen. 204) being in conflict with *City of Port Hueneme* v. *City of Oxnard, supra,* 52 Cal. 2d 385, and therefore, the appellants take the position that this amendment was purely a clarification and was retroactive to and including February 1961. Appellants have cited several cases involving retail sales tax, building and loan association, revenue and taxation, franchise tax, unemployment insurance and corporations franchise tax acts as being examples of establishing the rule that where there is a clarifying change in the law, and not a substantive change, it may have a retrospective effect. The cases cited by appellants may be summarized by the following, quoted from *County of Alameda* v. *Clifford,* 187 Cal.App.2d 714 [10 Cal.Rptr. 144] at pages 722-723:

" 'Although courts ordinarily infer an intent to change the law from a material change in the language of a statute [citations], the circumstances may indicate merely a legislative intent to clarify the law [citations].' (*W. R. Grace & Co.* v. *California Emp. Com.,* 24 Cal.2d 720, 729 [151 P.2d 215]; see also *Union League Club* v. *Johnson,* 18 Cal.2d 275, 278 [115 P.2d 425].)''

We believe that the amendment to the Act is not retroactive; that the law existing on February 14th provided that the number of registered voters on that date must be less than twelve for the territory to be deemed uninhabited; and that it was not the intent of the Legislature to make this new amendment retroactive, nor was the measure a clarifying one.

While respondent mentions the defense of unclean hands, we are not discussing that item for the reason that appellants make no issue in their brief as to this point. We agree with the trial judge who said that, ''One who objects to his property being included in a proposed annexation may pursue any valid method he desires to defeat the annexation.''

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied November 8, 1962, and appellants' petition for a hearing by the Supreme Court was denied December 12, 1962.